IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

DONNELL RUSSELL D/B/A

Business entity ID # 1406290000022

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-

MICHAEL G FREEDMAN

THE FREEDMAN FIRM

NADIA SHIHATA

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names. Do not include
addresses here.)*

**Complaint for Violation of Civil
Rights**
(Non-Prisoner Complaint)

Case No. 25-cv-00984-PKC-LKE
_____
*(to be filled in by the Clerk's Office)*

Jury Trial:  ☑ Yes  ☐ No
*(check one)*

## NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting
from public access to electronic court files. Under this rule, papers filed with the court should
*not* contain: an individual's full social security number or full birth date; the full name of a
person known to be a minor; or a complete financial account number. A filing may include
*only*: the last four digits of a social security number; the year of an individual's birth; a
minor's initials; and the last four digits of a financial account number.

Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other
materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an
application to proceed in *forma pauperis*.

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | DONNELL RUSSELL D/B/A |
| Street Address | 1826 S Millard Ave |
| City and County | Chicago, Cook |
| State and Zip Code | Illinois, 60623 |
| Telephone Number | 312-632-3594 |
| E-mail Address | ib.drussell@gmail.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | MICHAEL G FREEDMAN  # 281279 |
| Job or Title (if known) | Attorney |
| Street Address | 1801 Central Park E,  Ste 450 |
| City and County | Los Angeles,  LA County |
| State and Zip Code | California, 90067 |
| Telephone Number | 310-285-2210 |
| E-mail Address (if known) | michael@thefreedmanfirm.com |

2

Defendant No. 2

| | |
|---|---|
| Name | THE FREEDMAN FIRM |
| Job or Title (if known) | |
| Street Address | 1801 Central Park E, Ste 450 |
| City and County | Los Angeles, LA County |
| State and Zip Code | California, 90067 |
| Telephone Number | |
| E-mail Address (if known) | michael@thefreedmanfirm.com |

Defendant No. 3

| | |
|---|---|
| Name | Nadia Shihata, |
| Job or Title (if known) | Attorney |
| Street Address | 155 Water Street (DUMBO) |
| City and County | |
| State and Zip Code | New York, 11201 |
| Telephone Number | 646-974-1143 |
| E-mail Address (if known) | nadia@shihatageddes.com |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

3

II.    **Basis for Jurisdiction**

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐    State or local officials (a § 1983 claim)

☒    Federal officials (a *Bivens* claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

_____

_____

_____

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

I. Amendment I (Frist) Violation - Freedom of Speech, Title 18 U.S.C. 2261A

II. Amendment IV (Foruth) Violation - No "Verified" Complaint.

III. Amendment VI (Sixth) Violation - Improper Venue.

IV. Amendment V (Fifth) Violation - Challenge to 18 U.S.C. 2261A

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

_____

_____

_____

4

## III.    Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

Eastern District of New York,

B.    What date and approximate time did the events giving rise to your claim(s) occur?

September of 2022

Reference Case 1:20-cr-00427

C.    What are the facts underlying your claim(s)? *(For example:  What happened to you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

Please reference attached statement of facts and exhibits.

IV.    **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Please reference attached spreadsheet of injuries.

V.    **Relief**

State briefly what you want the court to do for you.   Make no legal arguments. Do not cite any cases or statutes.  If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Reimbursment for days spent in FCI Standstone

Reinbursment of all attorney fees

Public Notice of Apollogy

VI.    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

6

A.      **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: Janurary 23 , 2025.

Signature of Plaintiff _____

(all rights reserved)

Printed Name of Plaintiff  Donnell Russell _____

7

**STATEMENT OF FACTS**

An Affidavit in Support of Arrest Warrant draft by U.S. Homeland Security, Special Agent Sylvette Reynoso and signed by Magistrate Judge Peggy Kuo on March 9, 2020, initiated case 20-MJ-239 that U.S. Attorney's Office received in Brooklyn, New York. The affidavit content was based solely on alleged actions described in the affidavit that secured my conviction and current detainment.

The first 14 pages of the 23-page Affidavit in Support of Arrest Warrant had absolutely nothing to do with me, but those 14 pages were used by Ann Karamingos, Assistant U.S. Attorney and Nadia Shihata, Former U.S. Attorney as a lead in to prejudice the grand jury against me from the very beginning. *(Exhibit 1)* Based on the July 3, 2022, Plea Agreement drafted by Breon Peace, U.S. Attorney and submitted to Michael Freedman, my hired attorney, whose services have been terminated, they attempted to get me to waive my 1st, 5th & 6th Amendment protected rights guaranteed by the United States Constitution.

In *United States vs Russell 20-cr-00427* and *United States vs Russell 20-cr-00538*, the United States Plaintiffs' inability to identify any threat of injury deprives the United States Plaintiff of a concrete stake in the outcome of this case, rendering the case moot and divesting this Court of subject matter jurisdiction. The Eastern District of New York federal court lacked the power to adjudicate the case because Third-Party Faith Rodgers never sustained any actual injury. The Southern District of New York never provided any proof that the "Threat Caller" was me or any of the theater attendees were physically injured after the cancelled airing, therefore both cases were moot and should have been dismissed for lack of subject matter jurisdiction.

The common denominator in both cases filed against me were my business relationship with Robert Sylvester Kelly aka R. Kelly, that the New York Prosecutors unsuccessfully tried to connect SDNY Case# 20-CR-00538 PPG and EDNY Case# 20-CR-00427 AMD to *USA v. Robert Sylvester Kelly 19-286*, also adjudicated in New York. Even though, the U.S. Prosecutors were unable to link the cases, they were able to prejudice and create bias in both administrator judges and a pool of peerless jurors.

Even though everything R. Kelly has been charged, convicted and serving time for happened before I connected with Kelly, I was aggressively pursued by the New York State's Attorneys in their pursuit to build a strong case consisting of a variety of offenses against Robert Kelly. Since I was unwilling, as well as unable, to assist the prosecutors in their case *19-286 USA v. Robert Sylvester Kelly* against Kelly, the prosecutors convened two secret unconstitutional peerless grand juries that resulted in me receiving charges from indictments in two (2) different instances: first with Interstate Stalking in EDNY and second, with Threating Physical Harm By Interstate Communication in SDNY. My hired attorney, Michael Freedman's ineffective assistance of counsel led to convictions in both cases, and I voluntarily surrendered on May 10, 2023, to the FCI in Sandstone Minnesota for a 32-month sentence for both cases (consecutively).

**CONSTITUTIONAL RIGHTS VIOLATIONS**

I.       Amendment I Violation - Freedom of Speech, Title 18 U.S.C. 2261A, the.

The First Amendment protects my right to freedom of speech and expression, including sarcastic comments you make online or in a text message. A glaring flaw in the case is that, to the extent I criminalized my conduct using Domestic Relation Title 18 U.S.C. 2216A, is the violation of the First Amendments, Speech and petitioning clauses as applied to me.

The actions in cancelling an unwanted contract sent to Robert Kelly that led to this case, as the first violation of the 1st Amendment, were taken in support of defending the infringement of Mr. Kelly's copyrighted name and the R. Kelly trademarked brand in the courts of public opinion and law against what I understood to be salacious and false allegations by an individual Faith Rodgers aka Jane Doe, who was attempting to capitalize off of her past sexual encounters with Mr. Kelly by giving numerous interviews  on CBS This Morning, Entertainment, The Latest R. Kelly Accuser Drops Bombshell in Interview. May 22, 2018, and Faith Rodgers being interviewed on several social media channels.  When I appeared on social media explaining how the contract was cancelled and sharing other discoveries but not targeting anyone specifically, and when Kelly Rodgers, mother of Faith Rodgers called my phone I was completely within my 1st Amendment freedom of speech right to tell her not to call my phone again or I would bring charges against her.

II.      Amendment IV Violation - No "Verified" Complaint.

A Verified Complaint prepared and signed by the prosecutor is required per the 4th Amendment* to lay the groundwork for the entire case. The starting document in *US vs Russell* Eastern District is an Affidavit in Support of a Search and Arrest Warrant prepared and signed by Homeland Security Agent Sylvette Reynoso, not the prosecutor. Rule 11 of the Federal Rules of Civil Procedures provides that every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name. If a properly drafted verified complaint was prepared, I'm sure one of the prosecutors as an attorney on record would have signed that complaint, but that was not the case, because no verified complaint was ever filed in case 20-mj-239 or 20-cr-00427.

III.     Amendment VI Violation - Improper Venue.

Fact 1: The State of New York was an improper venue, and the New York Circuit Court possessed no authority to the claim of subject matter jurisdiction because all the alleged violation took place outside of the jurisdiction of the Eastern District of New York, between Chicago, Illinois, my birthright domicile and Houston, Texas, the stated residence of Faith Rodgers, the alleged victim or the Southern District of New York because I was not in the State of New York or anywhere need the theater when the Cease & Desist call was made.

After Michael Freedman legal services were retained, I posed the same exact question to Freedman that I asked the appointed public defenders, but he never provided any satisfactory reason why or how New York was the proper venue for an alleged offense between Chicago and Texas.

The first glaring flaw in both cases was they venued in a judicial district with no connection to the charged conduct that violated the 6th Amendment*. These cases were venued in Brooklyn, New York for the Eastern District and New York, New York for the Southern District where none of the charged conduct allegedly occurred versus the Northern District of Illinois where all the charged conduct allegedly occurred.

Furthermore, all of the alleged violations of "Intestate Stalking" 18 USC §§ 2261A(2) and 2261(b)(5), 2 and 3551 et. seq, took place outside of the jurisdiction of New York, between Chicago, Illinois, my birthright domicile and Houston, Texas, the stated residence of Faith Rodgers, the alleged victim. The fact that the State of New York was an improper venue, and the New York Circuit Court possessed no authority to the claim of subject matter jurisdiction was challenged by me post-trial after I terminated the service of my ineffective counsel.

Freedman was ineffective for failing to move for a dismissal and/or challenging the improper venue. Since Freedman never challenged the venue or jurisdiction, I challenged both after I terminated his service.

## IV. Amendment VII Violation -No Trial By Jury

VOID FOR VAGUENESS- SOUTHERN DISTRICT Threatening Physical Harm By Interstate Communication Title 18, United States Code, Sections 875(c) and 2.)

Concerning my conviction, the whole Southern District of New York trial is invalid, fraudulent, null and void, even though it was a jury trial, because the jury that convicted me was not a jury of my peers and was, therefore, not a "Trial By Jury".

I was in fact informed by retained Attorney Freedman that disclosed that I would receive the same guilty verdict from every bias and prejudice New York juror that would be impaneled to hear the Eastern District of New York case 20-CR-427 (AMD), because of the guilty verdict delivered in the South District of New York case 20-CR-538 (PGG), that Attorney Freedman was paid $132,500 after pitching that my innocence would prevail but he ineffectively never challenged venue or subject matter jurisdiction. *(Exhibit 2)*

In the change of plea hearing that took place in the Southern District of New York Circuit Court about October 2022, Attorney Shihata, on the record, asked me a series of questions regarding my knowledge of the actions that subsequently lead to my conviction. During my testimony I expressly disclaimed this knowledge element that sending a Cease & Desist Letter to stop an extortionist lawsuit, that I did not write, would cause any harm or injury to Rodgers and then be used as the basis of the United States Government to file a lawsuit against me in the Eastern District of New

**Page 3 of 7**

York. A trial that baffles me because my protected freedom of speech rights in follow up social media interviews are being viewed by the court as dishonorable and a crime.

In *United States vs Russell 20-cr-00427* and *United States vs Russell 20-cr-00538*, the United States Plaintiffs' inability to identify any threat of injury deprives the United States Plaintiff of a concrete stake in the outcome of this case, rendering the case moot and divesting this Court of subject matter jurisdiction. The Eastern District of New York federal court lacked the power to adjudicate the case because there was no way to prove Third-Party Faith Rodgers sustained any actual injury. The Southern District of New York never provided any proof that the "Threat Caller" was me or any of the theater attendees were physically injured after the cancelled airing, therefore both cases were moot and should have been dismissed for lack of subject matter jurisdiction

Article III of the Constitution permits federal courts to adjudicate only actual cases or controversies. Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). This means litigants *must suffer*, or be threatened with, *an actual injury traceable to the defendant's actions*, and that the federal court must be able to grant effectual relief. See id. This case or-controversy requirement *must be satisfied at every stage* of judicial proceedings. Id. If it is not, the federal court lacks the power to adjudicate the case and must dismiss for lack of subject matter jurisdiction. E.g., Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

**INADEQUATE DISCOVERY**

FALSE CHARGE - 18 U.S.C. § 2261 (A)(2) Interstate Stalking IN EASTERN DISTRICT CASE

The federal prosecutors were very crafty in turning a domestic relations statute into a weaponized criminal statute by adding a fake (2) after the 18 U.S.C. 2216A Interstate Stalking filed in the Eastern District of New York. The defined characteristics of an 18 U.S.C. 2261 (A) Interstate Stalking violation must demonstrate that a perpetrator intended to kill, injure, harass, intimidate, or place another person in fear to justify the federal crime.

Fact 2: Prosecutors never proved there was any intent to do harm to Rodgers, but Freedman never presented any supporting motion to dismiss the charges.

Fact 3: Rodgers gave firsthand testimony in case #19-286 that she never met, nor had any direct contact with me. Freedman never performed any collection of discovery or interviewed any witnesses to compile this fact to be presented in my defense.

Fact 4: I was never in possession of the Eastern District's witness's contact information to make any direct contact. This fact was never presented in my defense to prove my innocence.

The Facts of This Case Fall Outside the Scope of the Charging Statue.

The second glaring flaw in this case is that the facts established at the Change of Plea hearing do not come within the scope of the charging statue. 18 U.S.C. 2216A contains a knowledge element and I expressly disclaimed the knowledge element at the Change of Plea hearing.

Reference transcripts for United States v. Russell, 1:20-cr-427-AMD-1, Page 24:

MS. SHIHATA: And would this course of conduct cause a reasonable person substantial emotional distress?

THE DEFENDANT: Are you asking me?

MS SHIHATA: Yes.

THE DEFENDANT: Apparently it did. *I didn't know that it did* but apparently it did, so I agree with that.

The facts established at the Change of Plea hearing did not establish the essential elements of the offense. My attorney was ineffective for failing to object to the Court's acceptance of my plea because (2) *Ensuring That a Plea Is Voluntary.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

(d) Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere: (B) the defendant can show a fair and just reason for requesting the withdrawal.

Therefore, the Eastern District Court of New York not only lacked subject matter jurisdiction because 18 U.S.C. 2261 (A)(2) states with the intent—but true intent was never proven, and in-fact voids this charge.

**MISLEADING ADVICE**

Attorney Freedman, who aligned himself with the New York U.S. Prosecutors as their agent from my vantage point and whose only motive for being present was to consistently discourage me from any further thoughts of trying to prove my innocence and to secure a guilty plea in this case for the New York U.S. Prosecutors. Freedman discouraged another court battle through the pressure he applied with needing to come up with another $125,000 to pay him and even more if an appeal needed to be filed after a second guilty verdict. He also presented that if I didn't enter a guilty plea, I would receive the maximum sentence of 5 years because Judge Donnelly is incapable of being impartial. This prejudice and biased statement alone "Judge Donnelly is incapable of being impartial" should be enough to disqualify Donnelly from ever presiding over this case in the first place.

I never wavered from the fact I knew I was innocent and never plead guilty but I subjected to psychological pressure from repeatedly being told if I did not plead guilty, the prosecutors would "go after my mother," and that I would piss the prosecution off, and they would seek the maximum

sentence of 5 years and take the lesser sentence of 20 months off the table for the purpose of fatiguing me into compliance with their measures.

**ERRONEOUS GUIDANCE**

Erroneous guidance received from Attorney Freedman was the fact that Judge Ann Donnelly was biased, prejudiced and incapable of being impartial referencing the 30-years of incarceration she sentenced Robert Sylvester Kelly too, proving he was ineffective for not challenging New York as the proper venue or requiring Judge Donnelly to recuse herself from administering the case.

Since I was not in agreement with the terms and conditions in the Plea Agreement, I added "All Without Prejudice" when I signed it because I was under duress. *(Exhibit 3)* It has been explained that pleading guilty to criminal charges is not a plea deal. The "Without Prejudice" rule will generally prevent statement made in a genuine attempt to settle an existing dispute whether written or orally, from being put before the court as evidence of admissions against the interest of the relevant party if the negotiations fail and the parties then must formally engage in a dispute resolution procedure.

Judge Donnelly failed at her administrator duty when she failed to use her judicial discretion in acknowledging that Prosecutors Shihata and Karamingos failed to meet the "Burden of Proof" and failed to secure a prosecutable signed Plea Agreement Contract drafted by Peace.

Judge Donnelly's failure to recognize that my peaceful protest to a public smear campaign that threatened my business should not have led to federal criminal charges that have disrupted my life carries a gross breach of trust in the judicial system, when a suggestion of the law of torts would have been a simple resolution. Additionally, the Prosecuting Attorneys, as fiduciary representatives of the United States of America, have an obligation, responsibility and duty to uphold the bylaws in the form of the United States Constitution's Articles and Amendments that protect "We the People", as the shareholders.

Therefore, I am asking each oversight constituent in receipt of my Errors & Omission Claim and Statement 95 Tort Claim of this civil rights violation to provide remedy and relief using all the stated facts above, for specific personal listed injuries and injuries I sustained listed in my attached fee schedule from the New York Courts.

My hired attorney failed at his fiduciary duty to prepare and advise his client, and was ineffective in failing to defend my 1st, 4th, 5th & 6th Amendment Rights. *(Exhibit 4 & 5)* Although several meetings were scheduled due to Freedman's trial schedule, we never met to prepare a defense, secure testimony from any of the witness prepared to testify on my behalf or even review discovery ahead of us both arriving at the courthouse in New York for trial. Freedman also never secured my legal file from my previous public defender, nor did he file any pretrial motions in the EDNY case (20-cr-427) *(Exhibit 6)*.

As a direct result of Freedman's ineffectiveness, a Default Judgment in the amount of $10.3M was secure against me in Civil Case Lizette Martinez Et Al V. Donnell Russell Et Al 160759/202. This entire case was based on the outcome of my Eastern and Southern District. As part of the plaintiffs'

argument they tried to prove that I was R.Kelly's manager.  Regardless of the fact that every witness who testified stated under oath they did not know me in any capacity, the default judgement was granted.  I was never R.Kelly's manager.  I never worked for him in any capacity.  But what's more, perplexing is why Freedman would list on his Firms website that he represented R.Kelly's Manager and "Won acquittal on conspiracy charge as sole trial counsel trail in SDNY..." and "**successful resolution** of related EDNY prosecution." So basically, it was part of the plan me to go to jail for exercising my rights of a peaceful protest.

So now I must rely on you, and as a sworn in fiduciary representative of the United States of America, you have an obligation, responsibility and duty to uphold the bylaws in the form of the United States Constitution's Articles and Amendments that protect "We the People", as the shareholders.

I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Sanctions Under Rule 11. When an attorney signs a complaint or other paper in court, the attorney represents that the filing has legal and evidentiary support and isn't filed in bad faith. This baseline of fair play is enforced by FRCP 11

Therefore, I move the honorable court in this civil rights violation to provide remedy and relief using all the stated facts above, for specific personal listed injuries and injuries I sustained listed in my attached fee schedule from the New York Courts.

Date: 2-7-25

Sincerely,

By:

All Rights Reserved

Russell, Donnell-Anton
Chief Executive Officer
dba DONNELL RUSSELL
Business entity ID #1406290000022
Minnesota Secretary of State, Steve Simon
Filed: 28 January 2025

# Exhibit 1

F.#: 2020R00275

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

### DONNELL RUSSELL,

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 2261A(2)(B), 2261(b)(5), 2 and 3551 et seq.)

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

*Clerk*

*Bail, $* _____

_____

*Elizabeth Geddes, Nadia Shihata & Maria Cruz Melendez, Assistant U.S. Attorneys*
*(718) 254-7000*



EAG:NS
F. #2020R00275

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

DONNELL RUSSELL,
    also known as "Don Russell"
    and "Colon Dunn,"

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**INDICTMENT**

Cr. No. _____
(T. 18, U.S.C., §§ 2261A(2)(B),
 2261(b)(5), 2 and 3551 et seq.)

THE GRAND JURY CHARGES:

<u>INTERSTATE STALKING</u>

On or about and between November 2018 and February 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DONNELL RUSSELL, also known as "Don Russell" and "Colon Dunn," together with others, did knowingly and intentionally use (i) the mail, (ii) an interactive computer service, electronic communication service and electronic communication system of interstate commerce, and (iii) a facility of interstate commerce to engage in a course of conduct that caused, attempted to cause and would reasonably be expected to cause substantial emotional distress to Jane Doe, an individual whose identity is known to the Grand Jury, and an

2

immediate family member of Jane Doe, with the intent to harass and intimidate Jane Doe and the immediate family member of Jane Doe.

(Title 18, United States Code, Sections 2261A(2)(B), 2261(b)(5), 2 and 3551 et seq.)

A TRUE BILL

FOREPERSON

SETH D. DUCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

EAG:NS
F. #2020R000275

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

DONNELL RUSSELL,
    also known as "Don Russell" and
"Colon Dunn,"

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

**AFFIDAVIT IN SUPPORT
OF ARREST WARRANT**

(18 U.S.C. §§ 2261A(2), 2261(b)(5), 2
  and 3551 et seq.)

Docket No. 20-MJ-239

EASTERN DISTRICT OF NEW YORK, SS:

SYLVETTE REYNOSO, being duly sworn, deposes and states that she is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

On or about and between November 2018 and February 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DONNELL RUSSELL, also known as "Don Russell" and "Colon Dunn," together with others, did knowingly and intentionally use (i) the mail, (ii) an interactive computer service, electronic communication service and electronic communication system of interstate commerce, and (iii) a facility of interstate commerce to engage in a course of conduct that caused, attempted to cause and would reasonably be expected to cause substantial emotional distress to Jane Doe, an individual whose identity is known to the Affiant, and an immediate

2

family member of Jane Doe, with the intent to harass and intimidate Jane Doe and an immediate family member of Jane Doe.

(Title 18, United States Code, Sections 2261A(2), 2261(b)(5), 2 and 3551 et seq.)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.     I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been since 2008.  I am currently assigned to HSI's New York Office and, more specifically, to a squad that investigates human trafficking and alien smuggling matters.  I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for sex and human trafficking and related offenses.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2.     As described herein, following a civil law suit filed by Jane Doe, an individual whose identity is known to the Affiant, against Robert Kelly, also known as "R. Kelly," the defendant DONNELL RUSSELL, also known as "Don Russell" and "Colon Dunn," together with others, engaged in a course of conduct designed to harass and intimidate Jane Doe by, among other things, threatening to reveal potentially embarrassing

---

[1]     Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

photographs of Jane Doe and to publicly reveal Jane Doe's sexual history if Jane Doe did not withdraw her lawsuit against Kelly.

I.      BACKGROUND

3.      The U.S. Attorney's Office for the Eastern District of New York and the Department of Homeland Security, Homeland Security Investigations, New York Field Office (collectively, "the government") are investigating Robert Sylvester Kelly, also known as "R. Kelly," (hereinafter, "Kelly") and others for their participation in a racketeering enterprise involving bribery, the production of child pornography, transportation of women and girls across state lines to engage in illegal sexual activity, including sexual contact with individuals who were too young to consent to such activity under state law and failure to notify sexual partners of a sexually transmitted disease prior to engaging in sexual intercourse in violation of state law, and related substantive offenses; and for arranging for travel in interstate commerce with intent to promote, manage, establish, and carry on an extortion, in violation of state law.

4.      On December 5, 2019, a grand jury in the Eastern District of New York returned a Second Superseding Indictment (the "Indictment")[2] charging Kelly with racketeering involving predicate racketeering acts related to six individuals, whose identities are known to the Affiant, including Jane Doe, and four Mann Act violations related to Jane Doe. See 19-CR-286 (AMD), ECF Docket No. 30. The Mann Act violations related to Jane

---

[2]      The original indictment was returned on June 20, 2019. The First Superseding Indictment was returned on July 10, 2019. Kelly was arrested by HSI agents in Chicago, Illinois on July 11, 2019.

4

Doe are also charged as Racketeering Acts in the Indictment. Kelly is also charged with forced labor of Jane Doe, in violation of 18 U.S.C. § 1589(a), as a racketeering act.

<u>The Enterprise</u>

5.    For more than three decades, Kelly, with the assistance of members of his inner circle and his employees, including Employee #1, Employee #2, Employee #3 and Employee #4, whose identities are known to the Affiant, has produced musical albums and performed throughout the United States and abroad under the name R. Kelly. In or about 2014, RSK Enterprises LLC, a Delaware limited liability company with its principal place of business in Chicago, Illinois, was incorporated. RSK Enterprises LLC worked exclusively with Kelly, who sang and produced records under the name R. Kelly, and contracted out Kelly's performances.

6.    Kelly and members of his inner circle comprised an enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4). That is, the Enterprise, including its leadership, membership and associates constituted a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

7.    The principal purposes of the Enterprise were to promote R. Kelly's music and the R. Kelly brand and to recruit women and girls to engage in illegal sexual activity with Kelly. By promoting R. Kelly's music and the R. Kelly brand, the members of the Enterprise expected to receive financial opportunities and personal benefits, including increased power and status within the Enterprise.

5

8.      In connection with the Enterprise, Kelly and other members of the Enterprise traveled throughout the United States and abroad to perform at concert venues and promote the R. Kelly brand. Through that activity, and as described below, Kelly and members of the Enterprise have encountered and recruited women and girls to travel across state lines to engage in sexual activity with Kelly and Kelly regularly video recorded his sexual encounters with these women and girls.

9.      The Enterprise employed tour buses and Mercedes Sprinters to transport Kelly and other members of the Enterprise, among others, to perform at R. Kelly concerts throughout the country.

10.     When Kelly attended or performed at concerts and other events, Kelly and/or members of the Enterprise on Kelly's behalf invited women and girls backstage and to other events following Kelly's live performances. These women and girls were often offered wristbands that signified that they were authorized to attend an event. There, Kelly relied upon members of the Enterprise to ensure that only those authorized to attend were allowed at the event and to manage the flow of women and girls who were directly interacting with Kelly.

11.     When Kelly identified a woman or girl who he wished to see again, he either gave his contact information to the woman or girl or obtained their contact information or relied upon members of the Enterprise to do so. Following these events, Kelly communicated with certain of these women and girls by telephone, including traditional telephone calls, text messages, iMessages, and FaceTime. As part of this communication, Kelly often requested the women and girls to provide him with photographs of themselves.

6

12.    Kelly and other members of the Enterprise also arranged for the women and girls to travel to see Kelly on occasion, including at concerts throughout the United States and related events. To facilitate their travel, Kelly directed the women and girls to contact a member of the Enterprise, who then arranged travel for the women and girls. When the women and girls arrived at the lodging, which was typically selected by a member of the Enterprise, a member of the Enterprise usually provided them with instructions. In addition, members of the Enterprise took steps to ensure that the women and girls did not interact with other women and girls whom Kelly planned to see. Members of the Enterprise then arranged for the women and girls to attend his concerts and positioned them such that Kelly could see them during his concerts.

13.    Several witnesses have advised that Kelly promulgated numerous rules that many of his sexual partners were required to follow, including the following:

a.    The women and girls were not permitted to leave their room without receiving permission from Kelly, including to eat or go to the bathroom;

b.    The women and girls were required to wear baggy clothing when they were not accompanying Kelly to an event or unless otherwise instructed by Kelly;

c.    The women and girls were not permitted to look at other men and instead were told to keep their heads down; and

d.    The women and girls were required to call Kelly "Daddy."

14.    The Enterprise operated within the Eastern District of New York and elsewhere, including overseas.

15.    Among the means and methods by which Kelly and his associates participated in the conduct of the affairs of the Enterprise were the following:

7

a.    Promoting, enhancing and protecting the Enterprise by committing, attempting, and aiding and abetting the commission of, crimes, and conspiring to commit crimes, including but not limited to engaging in sexual activity with girls under 18 years old, engaging in and facilitating sexual activity without disclosing a sexually transmitted disease Kelly had contracted, producing child pornography, bribery and extortion;

b.    Demanding absolute commitment to Kelly and not tolerating dissent;

c.    Obtaining sensitive information about members and associates of the Enterprise in order to maintain control over them;

d.    Recruiting and grooming sexual partners for Kelly; and

e.    Isolating associates and others from friends and family and making them dependent on Kelly for their financial wellbeing.

### Criminal Activity Related to Jane Doe by Kelly

16.    Jane Doe has advised the following, in sum, substance and in part:[3]

a.    In or about March 2017, Jane Doe met Kelly following a Kelly concert in Texas when Jane Doe was 19 years old.  Specifically, Jane Doe met Kelly after she obtained a "wristband" that permitted her to go to an "after party" following an R. Kelly concert in San Antonio, Texas.  When she met Kelly at the after party, Kelly gave her his telephone number and she eventually sent the number a text message and they started to

---

[3]    As described further below, Jane Doe has filed a civil lawsuit in New York State court against Kelly.  Information provided by Jane Doe has been corroborated in part by information provided by other witnesses and other records obtained by subpoena.

8

regularly communicate by telephone including by text message and telephone calls, including FaceTime calls.

b.      At Kelly's request, Jane Doe contacted Employee #1 to arrange travel from Texas, where she lived, to New York, where R. Kelly was scheduled to perform a concert.[4] Employee #1 thereafter arranged Jane Doe's travel and advised her that her airline ticket and hotel would be directly paid for and certain miscellaneous expenses associated with the travel that she incurred would be reimbursed. Jane Doe then traveled from Texas to

---

[4]      Based on records obtained by subpoena and information provided by witnesses, including Employee #1 and Employee #2, Employee #1 worked for several years as an assistant to Kelly and frequently handled travel arrangements for women who traveled to see Kelly at Kelly's request. Southwest Airlines records show that Jane Doe traveled from San Antonio, Texas to Nashville at 7:15 a.m. on May 18, 2017 and then from Nashville to LaGuardia Airport in Queens, New York on a flight departing at 10 a.m. the same day. Southwest Airlines records further show that Jane Doe traveled on a flight from LaGuardia Airport to San Antonio on May 20, 2017 at 5 p.m.

In addition, Jane Doe provided copies of text message exchanges in her possession between Jane Doe and Employee #1 to the government. One such exchange indicates that at approximately 9:20 a.m. on May 18, 2017, Jane Doe sent Employee #1 a text message stating "Just landed in Nashville. . . . Do you know what the plan for when I arrive?" Thereafter, Employee #1 sent a text message to Jane Doe stating "When you land, your destination is: Hilton Long Island Huntington[,] 598 Broad Hollow Road Melville, NY 11747 . . . A room under your name at the Hilton for 2 nights[.]" After arriving at the hotel, Jane Doe sent a text message to Employee #1 stating "I'm here checking in they don't see anything under my name." Employee #1 then texted Jane Doe, "Can you ask them to look up my name? Your name may be with mine." Jane Doe agreed to do so and later texted Employee #1, "I checked into the room." Thereafter, Employee #1 texted Jane Doe to let her know that "there is a show tonight starting at 8 pm" and later added "I'll let you know what time to head to the venue. Standby for address... Venue: Theatre At Westbury 960 Brush Hollow Road Westbury, NY 11590" Employee #1 thereafter sent a text message to Jane Doe #6 indicating that she would "request an Uber" for Jane Doe to take her to the venue.

On May 18, 2017, Kelly performed a concert at NYCB Theatre at Westbury, located at 960 Brush Hollow Road in Westbury, New York. Records from the Hilton Hotel on Long Island show that two rooms were reserved under Employee #1's name for May 18, 2017 and May 19, 2017.

New York and took a car service to the hotel designated by Employee #1 in Long Island, New York.

c.     When Jane Doe arrived at the hotel, Employee #1 instructed her to be ready at a particular time. At or near the time Employee #1 had told her, Jane Doe was transported to the concert venue for an R. Kelly concert. Following the concert, she returned to the hotel.

d.     At approximately 6:00 a.m., Kelly unexpectedly arrived at Jane Doe's room and loudly announced his presence; with him was a backpack, which appeared to contain at least one iPad. Jane Doe allowed Kelly to enter her hotel room and Kelly eventually engaged in sexual intercourse with Jane Doe in the hotel room. Kelly did not wear a condom. Prior to this encounter, Kelly did not mention to Jane Doe that he had contracted herpes, a sexually transmitted disease.

e.     During the encounter in the hotel room in Long Island, Kelly told Jane Doe, in sum and substance, that if she was really 15 or 16 years old, she could tell Kelly. Jane Doe told Kelly she was 19 and offered to show him her driver's license. Following the trip to Long Island, Jane Doe continued to communicate with Kelly by phone and text messages.

f.     Jane Doe next traveled to Chicago, Illinois, to see Kelly in June 2017.[5] As with her trip to Long Island, Employee #1 booked her travel and instructed her

---

[5]     Text messages between Jane Doe and Employee #1, which Jane Doe provided to the government, indicate that Employee #1 booked Jane Doe on a flight departing San Antonio, Texas at 7:05 p.m. on June 14, 2017 to Chicago, Illinois. Records from Southwest Airlines show that Jane Doe was booked on a return flight from Chicago, Illinois to San Antonio, Texas on June 16, 2017 at 12:10 p.m. The payment records for the ticket purchase reference Employee #1's email address.

when she should be ready. Jane Doe stayed at the Homewood Suites and was later brought to a recording studio to see Kelly. During that visit to the studio, Kelly pulled out his penis and directed Jane Doe's head onto his penis such that she could perform oral sex on him. Following the trip to Chicago, Jane Doe continued to communicate with Kelly.

g.  Jane Doe next travelled to see Kelly in December 2017 in Dallas, Texas, where he had a concert, and Kelly again had sex with her.[6] While together in Dallas, Kelly told Jane Doe, in substance, he was residing with multiple women, including some who had been living with him since they were 15 years old, and that he liked Jane Doe because she reminded him of those women. Kelly next arranged for Jane Doe to travel to Los Angeles to see him in January 2018.[7] During this trip, Jane Doe went to a recording

---

[6]  Text messages between Jane Doe and Employee #1, which Jane Doe provided to the government, indicate that Employee #1 booked Jane Doe on a Southwest Airlines flight departing San Antonio, Texas at 1:15 p.m. on December 1, 2017 to Dallas, Texas. A copy of an electronic boarding pass provided by Jane Doe to the government indicates that she flew from Dallas, Texas back to San Antonio on Southwest Airlines flight 3592 on December 3, 2017 at 4 p.m. Records from Southwest Airlines confirm that Jane Doe was booked on a flight from San Antonio to Dallas on December 1, 2017 at 1:15 p.m. and a return flight from Dallas to San Antonio on December 3, 2017 at 4 p.m. The payment records for the ticket purchase reference Employee #1's email address. Jane Doe recalled staying at the Statler Hotel in Dallas during this trip. Records from the Statler Hotel in Dallas indicate that Employee #1 of RSK Enterprises booked a room at the hotel from December 1, 2017 to December 6, 2017, with Jane Doe indicated as a listed guest for the room.

[7]  Text messages between Jane Doe and Employee #1, which Jane Doe provided to the government, indicate that Employee #1 booked Jane Doe on a Southwest Airlines flight from San Antonio, Texas to Los Angeles, California (with a connection in Phoenix to change planes), departing San Antonio at 12:55 p.m. on a date in January 2018, with a return trip to San Antonio booked for January 14, 2018. Records from Southwest Airlines confirm that Jane Doe was booked on a flight from San Antonio, Texas to Phoenix on January 12, 2018 departing at 12:55 p.m., a flight from Phoenix to Los Angeles at 4:25 p.m., and a return flight from Los Angeles to San Antonio on January 14, 2018 at 4:45 p.m. The payment record for the ticket purchase references Employee #1's email address.

studio in Los Angeles to see Kelly. Once at the studio, Jane Doe waited for many hours, without food or water, for Kelly to arrive. Kelly stayed for a short period of time and did not show up again until the following day. Kelly told her that when he did come, Jane Doe was to be "ready" for him and that when he told her to give him oral sex, she needed to jump up and act super happy. When he arrived that following day, Kelly had a backpack with him; he took Jane Doe into a smaller area/room within the room she had been waiting for him in and instructed Jane Doe to take off her clothing. Jane Doe noticed a gun, which Kelly moved to a small table nearby.[8] Kelly then proceeded to ask Jane Doe a series of questions, warning her there would be consequences if she lied. Jane Doe believed she was not free to leave the room. Thereafter, Jane Doe gave Kelly oral sex while in the room.

h.    Jane Doe traveled a final time to meet Kelly in February 2018 in connection with Kelly's trip to New York City for the 2018 Grammy Awards.[9] She recalled staying in Kelly's room at a hotel with a name that sounded like the "Mandarin." The day after she arrived, Kelly entered the hotel room at approximately 10:00 or 11:00 in the morning and when he walked inside, he immediately propped an iPad, opened all the curtains and said, "You need to get used to my schedule." Kelly then put Jane Doe in front of the

---

[8]    Employee #1 has advised that in approximately February 2018, she observed a handgun behind the bar area in Kelly's Chicago studio.

[9]    The 60th Annual Grammy Awards were held on January 28, 2018 at Madison Square Garden in New York City. Records from the Mondrian Park Avenue show that RSK Enterprises booked multiple rooms at the Mondrian Park Avenue from late January 2018 through late February 2018, including for recording artist R. Kelly. American Airlines records show that Jane Doe had a flight reservation to travel from San Antonio, Texas at 5:35 p.m. on February 2, 2018 to LaGuardia Airport in Queens, New York (through Charlotte, North Carolina) and to return to San Antonio on a flight leaving LaGuardia Airport at 5:59 p.m. on February 4, 2018 (traveling through Dallas, Texas); Employee #1's name and address are listed in the "Address Information" portion of this flight record.

12

iPad camera and told her to touch herself. When she declined to do that, he stopped recording. Kelly thereafter engaged in sexual contact with Jane Doe. Prior to this encounter, Kelly did not tell Jane Doe that he had contracted herpes.

> i.   Jane Doe thereafter learned that she had contracted herpes from Kelly[10] and subsequently filed a lawsuit against Kelly.

> j.   At one point during Jane Doe's relationship with Kelly, Kelly asked her to provide him with a list of things that she did not want "the world" to know about and volunteered to help her craft that list; Jane Doe did not actually provide Kelly with such a list. Kelly also asked her to sign some documents, but she never did.

17.    Jane Doe has provided the government with copies of various communications she engaged in with both Kelly and Employee #1 using an iPhone. The communications with Kelly include a screen shot of a FaceTime video chat between Kelly and Jane Doe, as well as various text message exchanges using the Apple iMessage feature, during which Jane Doe refers to Kelly as "daddy" and where the two send photographs of themselves to each other.

## II.    PROBABLE CAUSE

18.    As noted above, on or about May 21, 2018, an attorney for Jane Doe at the time with a law office in Brooklyn, New York (the "Civil Attorney") filed a lawsuit on Jane Doe's behalf against Kelly in New York County Supreme Court (the "Lawsuit"). The Lawsuit alleged multiple causes of action against Kelly related to Kelly's sexual interactions with Jane Doe, including, inter alia, sexual battery, civil battery, negligence and gross

---

[10]    Medical records for Kelly indicate that Kelly contracted herpes and was so advised by his treating physician prior to March 2017.

13

negligence, intentional infliction of emotional distress, fraud/concealment, and false imprisonment. The Lawsuit sought general and special damages, compensatory damages, punitive and exemplary damages in amounts to be determined at trial, as well as costs and reasonable attorney's fees from Kelly. The Lawsuit included the Civil Attorney's office address in Brooklyn, New York.

19.     The Civil Attorney[11] has advised, in substance and in part, that in or about the Fall of 2018, the Civil Attorney's receptionist received an envelope via United States Postal Service ("USPS") certified mail at the Civil Attorney's law office in Brooklyn, New York, which the receptionist subsequently provided to the Civil Attorney (the "Envelope"). The Civil Attorney has provided the USPS tracking number for the Envelope (the "Tracking Number"), as well as the Envelope and its contents, to the government.

20.     According to records from USPS related to the Tracking Number, USPS came into possession of the Envelope at a location in Chicago, Illinois with zip code 60601-3218 on November 20, 2018 at approximately 3:24 p.m. and the Envelope was subsequently delivered to the address of the Civil Attorney's law office at the time in Brooklyn, New York on November 26, 2018 at approximately 1:18 p.m. by being left with an individual who signed for the Envelope. USPS records also include a copy of the signature of the individual who signed for and received the Envelope (the "Signature"). USPS records related to the Tracking Number also provide a tracking number for the certified mail return receipt associated with the Envelope (the "Return Receipt"). USPS

---

[11]     In March 2019, the Civil Attorney was convicted by a federal jury in this District of obstructing an official proceeding, and conspiring to do the same. When the Civil Attorney provided the letter to law enforcement, she was facing indictment in this District, awaiting trial, but did not disclose her pending indictment.

14

records related to the Return Receipt tracking number indicate that the destination address for the Return Receipt was 219 N. Justine Street, Chicago, Illinois 60607-1403 – the address of a warehouse rented and used as, inter alia, a recording studio by Kelly at the time.

21.     Law enforcement agents interviewed an individual who, among other things, was responsible for handling incoming mail at the Brooklyn building in which the Civil Attorney's office was located in November 2018. This individual was shown a copy of the Signature from USPS records and confirmed that the Signature belonged to him/her.

22.     I have reviewed the contents of the Envelope, which contained the following items: (1) a one-page letter dated October 22, 2018 addressed to the Civil Attorney at her law office in Brooklyn, New York, signed with a handwritten signature over the name "Robert Sylvester Kelly" (the "October 22, 2018 Letter"); (2) a one-page document entitled "Testimony," which purports to set forth an under oath statement from "Robert Sylvester Kelly," with a handwritten signature on the bottom and dated October 20, 2018; (3) a one-page "Notice of Delivery" (the "Notice of Delivery") with a version of the case caption for the Lawsuit addressed to the Civil Attorney's law office signed by "June Barrett," care of an address in Chicago, Illinois and a listed Yahoo email address;[12] (4) a copy of what appears to be the cover page for the Lawsuit, a Summons in the Lawsuit addressed to Kelly and the first page of the Verified Complaint and Demand for Jury Trial for the Lawsuit, with the following stamp affixed to each document: "I DO NOT ACCEPT THIS OFFER TO CONTRACT AND I DO NOT CONSENT TO THESE PROCEEDINGS," with Kelly's

---

[12]     Subscriber records for the listed Yahoo email address indicate that the account is subscribed to by June Barrett of Chicago, Illinois with zip code 60623. Based on a review of a certified copy of RUSSELL's birth certificate, I believe that June Barrett is RUSSELL's mother.

15

purported handwritten signature and a State of Illinois Notary stamp and signature for "June A. Barrett" dated October 29, 2018; (5) and two one-page documents containing photographs and text related to Jane Doe, further described below (hereinafter, "Attachment 1" and Attachment 2").

23.     Among other things, the October 22, 2018 Letter addressed to the Civil Attorney states:

> Please advise Ms. [Jane Doe's last name], your client to abandon this heartless effort to try to destroy my musical legacy for selfish, personal enrichment. If she persists in court action she will be subjected to public opinion during the discovery process. For example, my law team is prepared to request the production of the medical test results proving the origin of her STD claim, as well as 10 personal male witnesses testifying under oath about her sex life in support of her claim and complete records of her text/face time message exchanges, which will be reviewed to match and be authenticated by the recipient to insure there are no omissions or deletions.
>
> If Ms. [Jane Doe's last name] really cares about her own reputation she should cease her participation and association with the organizers of this negative campaign. Counter actions are in the developmental stages and due to be released soon.

24.     Attachment 1 is entitled "Here's [Jane Doe's name], your client", which title is followed by three photographs of Jane Doe's face, two of which appear to have been taken from TV interviews of Jane Doe. The following text appears below the three photographs of Jane Doe: "Here's a sample of the real [Jane Doe's name]. Remember she lives in Texas, so her claim of being intimidated falls flat because these pics were sent via text." Four photographs appear below the aforementioned text: (1) a photograph of Jane Doe and a man who appears to be Kelly; (2) a close-up photograph of Jane Doe's face and the top portion of her exposed breasts, including a partial portion of her nipple area; (3) a photograph

16

of Jane Doe kneeling on a bed, which includes a partial portion of her exposed buttocks; and (4) a photograph of a text message exchange on what appears to be an iPhone where the iPhone owner states "In a meeting send me the picture baby" and Jane Doe responds with a clothed photograph of herself followed by an iMessage stating, "Is this better daddy." The following text appears below these four photographs: "I assure you this would not be considered a Sunday go-to-meeting dress. The next two pictures have been cropped for the sake of not exposing her extremities to the world, yet!!! I'm a singer, not a doctor, so how does Ms. [Jane Doe's last name] justify her transmissions of these kinds of pictures." Based on my review of Attachment 1, I believe the reference to "the next two pictures" is a reference to the close-up photograph of Jane Doe's face and the top portion of her exposed breasts, including a partial portion of her nipple area and the photograph of Jane Doe kneeling on a bed, which includes a partial portion of her exposed buttocks, described above, that appear on top of this text.

25. Attachment 2 consists of three photographs of text message exchanges on what appears to be an iPhone with the following text above the photographs: "Ms. [Jane Doe's last name] usage of 'daddy' is/was her choice! It's very interesting how the difference in age only becomes a factor when things didn't go as she planned." The text message exchanges include texts to the owner of the iPhone where the owner is called "Daddy" and a text message where an address is disclosed.

26. Based on training, experience and knowledge of this investigation, there is probable cause to believe that when the author wrote, "The next two pictures have been cropped for the sake of not exposing her extremities to the world, yet!!!" the author intended to communicate to Jane Doe that if she did not withdraw the civil lawsuit she filed

17

against Kelly, intimate and potentially embarrassing photographs of Jane Doe would be publicly released.

27.    Jane Doe did not withdraw her lawsuit against Kelly.

28.    On January 6, 2020, the Honorable Lois Bloom issued a search warrant for an email account subscribed to and used by RUSSELL (the "RUSSELL GMAIL ACCOUNT"). On December 2, 2018, RUSSELL, using the RUSSELL GMAIL ACCOUNT, sent an email to an individual whose identity is known to the Affiant (the "Individual") with the text "Check this out – Kindest Regards Don Russell", and attaching a PDF document entitled "[Jane Doe's name].pdf" (the "Jane Doe PDF"). The second page of the Jane Doe PDF contains the verbatim text described above from Attachment 1: "Here's a sample of the real [Jane Doe's name]. Remember she lives in Texas, so her claim of being intimidated falls flat because these pics were sent via text." This verbatim text is followed by the same four photographs that followed this text in Attachment 1, including the photographs of Jane Doe's partially exposed breast and buttocks. The following text, which is not verbatim to the text described above in Attachment 1, but contains a portion that is similar to the text following these same four photographs in Attachment 1, is written below the photographs on the second page of the Jane Doe PDF:

I assure you this would not be considered a Sunday Church dress. The next two pictures have been cropped from the originals for the sake of not exposing her extremities to the world, YET!!! Has [Jane Doe's last name] justified her transmission of these kinds of pictures. For instance, her showing off her new boob job via FaceTime. We also have the infamous video's [sic] that were supposedly taped without her knowledge/consent. In the one of the video's is [sic] shows Ms[.] [Jane Doe's last name] looking directly into the camera while she's riding Mr. Kelly. In another she's performing oral while looking directly in the camera.

18

29.     The third (and final) page of the Jane Doe PDF is exactly the same as Attachment 2. It consists of the following text: "Ms. [Jane Doe's last name] usage of 'daddy' is/was her choice! It's very interesting how the difference in age only becomes a factor when things didn't go as she planned" followed by the same three photographs of text message exchanges set forth in Attachment 2.

30.     On December 4, 2018, RUSSELL, using the RUSSELL GMAIL ACCOUNT, sent an email to the Individual stating "Here's what just went out!!!", which forwarded an email dated December 4, 2018, that was sent by "Colon Dunn," using the email address colondunn@yahoo.com (the "COLON DUNN EMAIL ACCOUNT"), with the subject line "The Survivors Exposed" and sent to various individuals employed by A&E Networks, which owns Lifetime Entertainment Services. Lifetime produced a documentary series featuring various of Kelly's accusers entitled "Surviving R. Kelly," which aired on the Lifetime TV network in early January 2019. As discussed further below, on the evening of December 4, 2018, Lifetime was to hold a private screening of a portion of the documentary at a theater in Manhattan, however, the screening was interrupted by a gun threat that was communicated by phone to the theater. The forwarded email from "Colon Dunn" attached a PDF entitled "The Survivors.pdf" ("The Survivors PDF") and stated:

> I've been asked to forward you a sample from the content within the package we are forwarding to various parties of interest later today. The complete presentation will be accompanied by a cease and desist demand and the legal document that will be filed in federal court on Friday morning December 7th after your itinerary is completed. The list of recipients will include: President/CEO of Lifetime Betty Cohen, President/CEO of A&E Paul Buccieri, CEO of Disney Company Robert A. Iger, A&E Legal department, the Board of directors for A&E Networks, as well as top executives at select media outlets. By the way, Mr. Kelly has spoken to the FBI as well. Thank You! Sincerely[,] Colon Dunn[,] Lead Investigator

31.    The Survivors PDF includes photographs and purported information related to various of Kelly's accusers who appear in the Surviving R. Kelly documentary series, including Jane Doe. The Survivors PDF also contains the same photographs contained within Attachment 1 and Attachment 2, as well as in the Jane Doe PDF described above, including the photographs of Jane Doe's partially exposed breast and buttocks.

32.    On December 4, 2018, the RUSSELL GMAIL ACCOUNT received an email sent by Yahoo that consisted of a notification of a sign-in onto the COLON DUNN EMAIL ACCOUNT on that date. Another email sent by Yahoo to the RUSSELL GMAIL ACCOUNT dated December 4, 2018 provided notification of a password change for the COLON DUNN EMAIL ACCOUNT. A third email sent by Yahoo to the RUSSELL GMAIL ACCOUNT on December 4, 2018 indicates that the user of the COLON DUNN EMAIL ACCOUNT removed the RUSSELL GMAIL ACCOUNT as an alternate email address for the COLON DUNN EMAIL ACCOUNT. Subscriber information for the COLON DUNN EMAIL ACCOUNT indicates that, as of January 2020, the alternate email address for the account is indybuild2013@gmail.com.

33.    On December 5, 2018, RUSSELL, using the RUSSELL GMAIL ACCOUNT, sent an email to the Individual, which appears to contain a draft email addressed to TMZ, a popular gossip website. Among other things, the draft email indicates that Kelly's staff became aware of the private screening of the Lifetime documentary series "about a month ago" and "[w]e publicly exhausted every legal measure to stop the event" and stating "[w]e strongly feel Lifetime was about to pull out once they received a sample of the results of our investigation. (See Attachment)." While no attachment is included in the draft email,

20

given the description of what was provided to "Lifetime" and the date of the draft email, there is probable cause to believe the intended attachment was The Survivors PDF.

34.    On December 21, 2018, Jane Doe and her mother received a series of text messages from telephone number (312) 203-3030, which included the text "Just a sample. We will seek criminal charges. You've been warned," followed by photographs of portions of the Survivors PDF, including the same photographs of Jane Doe within Attachment 1 and Attachment 2. Thereafter, inter alia, Jane Doe and her mother received text messages from telephone number (312) 203-3030 stating "Publishing soon" and "[T]his is Colon. My investigation will be done soon enough." On January 3, 2019, Jane Doe and her mother received a text message from telephone number (312) 203-3030 stating "Pull the plug or you will be exposed." Records from T-Mobile indicate that (312) 203-3030 was subscribed to by "Indybuild Corp" at 910 W Van Buren St. Ste. 100-352, Chicago, IL 60607-3523 from August 30, 2018 to January 10, 2019. According to his LinkedIn profile, RUSSELL is the Founder/President/CEO of IndyBuild in Chicago, Illinois and has been associated with IndyBuild since January 2015.

35.    Records received from Facebook indicate that a Facebook page called "Surviving Lies"[13] was created by Facebook user "Colon Dunn" with phone number (312) 203-3030, which phone number was verified by Facebook on December 3, 2018 at 23:09:36 UTC, and a registered email address of colondunn@yahoo.com, on January 7, 2019 at 02:42:01 UTC.[14] The "Surviving Lies" Facebook page was closed on January 7, 2019 at

---

[13]    Facebook records indicate that the account identifier for this Facebook page was misspelled "suvivinglies".

[14]    In January 2019, UTC time was five hours ahead of Eastern Time and six hours ahead

21

20:44:17 UTC. Media reports indicate that Facebook deactivated the "Surviving Lies" Facebook page after posts targeting Jane Doe and another of Kelly's accusers were posted on the page. A January 7, 2019 article from the Daily Mail includes screen shots from the "Surviving Lies" Facebook page that were posted on the page before it was taken down. Those screenshots include some of the same photographs of text message exchanges between Jane Doe and Kelly in Attachment #2, including one where an address is disclosed. In addition, the Daily Mail article states that "cropped images" of the same woman were also posted on the Facebook page allegedly showing Kelly "her breast augmentation following surgery." Following Facebook's deactivation of the "Surviving Lies" Facebook page, Facebook issued a statement indicating that the page violated Facebook's Community Standards and had been removed, adding "We do not tolerate bullying or sharing other's private contact information and take action on content that violates our policies as soon as we're aware."

36. Records from Facebook and AT&T indicate that the IP address for logins into the Colon Dunn Facebook account on January 7, 2019 is a unique IP address provisioned to an AT&T account belonging to DONNELL RUSSELL with a billing and service address in Chicago, Illinois with a 60623 zip code and a "preferred email" listed on the account as the RUSSELL GMAIL ACCOUNT.

37. On February 11, 2020, the Honorable Lois Bloom signed a search warrant for the COLON DUNN EMAIL ACCOUNT. On January 6, 2019, the COLON DUNN EMAIL ACCOUNT received (1) an email from Facebook titled "Get the most out of

---

of Central time.

22

your Page for Surviving Lies;" and (2) an email from Facebook Business, which included the following content: "Welcome to your new Facebook Page, Surviving Lies." On January 7, 2019, the COLON DUNN EMAIL ACCOUNT received an email from the Facebook Ads Team, which stated, inter alia, "Your ad is approved and should begin delivering shortly" and referred specifically to a "Campaign" for "Promoting Surviving Lies." In addition, on January 7, 2019, the COLON DUNN EMAIL ACCOUNT received a series of notifications from Facebook regarding various Facebook user's comments on posts and photographs on the Surviving Lies Facebook page.

38.    On or about January 25, 2020, RUSSELL appeared in a video interview live-streamed on YouTube. During the interview, RUSSELL introduced himself as Kelly's "advisor, consultant [and] friend" and indicated that he had known Kelly for "going on 30 years now." Thereafter, during the interview, RUSSELL discussed Jane Doe and the Lawsuit, holding up copies of items that had been sent to the Civil Attorney, described above, namely (1) the Notice of Delivery; (2) the Summons in the Lawsuit and the first page of the Verified Complaint and Demand for Jury Trial for the Lawsuit, with the stamp "I DO NOT ACCEPT THIS OFFER TO CONTRACT AND I DO NOT CONSENT TO THESE PROCEEDINGS"; and (3) Attachment 1 and Attachment 2. While holding up Attachment 1 to the camera, RUSSELL stated "That's my commentary at the bottom" – referring to the text that appears below the four photographs on Attachment 1.

39.    On or about January 26, 2020, RUSSELL appeared in another video interview live-streamed on YouTube. During the interview, RUSSELL held up copies of items that had been sent to the Civil Attorney, described above, namely (1) a copy of the first page of the Verified Complaint and Demand for Jury Trial for the Lawsuit, with the

23

following stamp affixed to the document: "I DO NOT ACCEPT THIS OFFER TO CONTRACT AND I DO NOT CONSENT TO THESE PROCEEDINGS," with Kelly's purported handwritten, notarized signature; and (2) Attachment 1 and Attachment 2. While holding up to the camera the Verified Complaint with the aforementioned stamp on it, RUSSELL stated Kelly "signed it." Thereafter, RUSSELL held Attachment 1 and Attachment 2 up to the camera and stated: "we sent" these documents "to the lawyer." RUSSELL further stated "these are the pictures of her [Jane Doe] that we sent. These are the texts messages of her that we sent."

40. Because public filing of this document could result in a risk of flight by the defendant, as well as jeopardize the government's investigation, your deponent respectfully requests that the complaint and arrest warrant be filed under seal.

41. WHEREFORE, your deponent respectfully requests that the defendant DONNELL RUSSELL, also known as "Don Russell" and "Colon Dunn," be dealt with according to law.

_____
SYLVETTE REYNOSO
Special Agent, United States Department of
Homeland Security, Homeland Security
Investigations

Sworn to before me this
9th day of March, 2020

_____
THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# Exhibit 2

**Bank of America** 

Bank of America | Online Banking | Accounts | Account Details | Account Activity

Online Banking

Business Adv Relationship - 6958: Account Activity Transaction Details

| | |
|---|---|
| **Post date:** | 03/30/2022 |
| **Amount:** | -75,000.00 |
| **Type:** | Withdrawal |
| **Description:** | WIRE TYPE:WIRE OUT DATE:220330 TIME:1415 ET TRN:2022033000430245 SERVICE REF:014068 BNF:THE FREEDMAN FIRM PC ID:80009625643 BNF BK:FIR ST REPUBLIC BANK ID:321081669 PMT DET:381371570 RE TAINER FOR NY |
| **Merchant name:** | THE FREEDMAN FIRM PC |
| **Merchant information:** | |
| **Transaction category:** | Cash, Checks & Misc: Other Expenses |

Share Your Feedback

https://secure.bankofamerica.com/myaccounts/details/deposit/search.go?adx=f3af7ebf2fb47dcdd214e3d24236e913ba4d95369940410

**Bank of America**

Bank of America | Online Banking | Accounts | Account Details | Account Activity

Online Banking

Business Adv Fundamentals - 3571: Account Activity Transaction Details

| | |
|---|---|
| Post date: | 04/26/2022 |
| Amount: | -10,000.00 |
| Type: | Withdrawal |
| Description: | WIRE TYPE:WIRE OUT DATE:220426 TIME:1110 ET TRN:2022042600325832 SERVICE REF:007131 BNF:THE FREEDMAN FIRM PC ID:80009625643 BNF BK:FIR ST REPUBLIC BANK ID:321081669 PMT DET:385035996 LE GAL RETAINER |
| Merchant name: ? | THE FREEDMAN FIRM PC |
| Merchant information: | |
| Transaction category: | Cash, Checks & Misc: Other Expenses |

Share Your Feedback

https://secure.bankofamerica.com/myaccounts/details/deposit/search.go?adx=643a7cdd425e4742b8160617d851944374c266dec001be452...

**Bank of America**

Online Banking

Business Adv Relationship – 6974: Account Activity Transaction Details

| | |
|---|---|
| **Post date:** | 07/12/2022 |
| **Amount:** | -12,500.00 |
| **Type:** | Transfer |
| **Description:** | TRANSFER THE ALTITUDE PROGRAM:The Freedman Firm PC Confirmation# 1466672299 |
| **Merchant name:** ? | THE ALTITUDE PROGRAM:THE FREEDMAN FIRM P |
| **Merchant information:** | |
| **Transaction category:** | Savings & Transfers: Savings |

Share Your Feedback

ttps://secure.bankofamerica.com/myaccounts/details/deposit/search.go?adx=9cc755eff2304e085bb9874758eaff44248912bb5f3457-47

# The Freedman Firm

10100 Santa Monica Boulevard, Suite 300
Los Angeles, California 90067
United States

# INVOICE

Invoice # 641
Date: 02/01/2023
Due On: 03/03/2023

Donnell Russell

## Russell

## EDNY Case

| Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|
| Service | 12/05/2022 | Finalize and file sentencing memo | 1.50 | $600.00 | $900.00 |
| Service | 12/18/2022 | Travel to New York | 8.00 | $600.00 | $4,800.00 |
| Service | 12/19/2022 | Sentencing | 2.50 | $600.00 | $1,500.00 |
| Service | 01/12/2023 | Met with MGF and discussed ex parte filing | 0.10 | $450.00 | $45.00 |
| Service | 01/23/2023 | Met with MGF and discussed letters re surrender date to file in SDNY and EDNY | 0.10 | $450.00 | $45.00 |
| Service | 01/24/2023 | Began drafting EDNY and SDNY letters re surrender date | 1.20 | $450.00 | $540.00 |
| Service | 01/25/2023 | Drafted EDNY and SDNY letters re surrender date | 0.60 | $450.00 | $270.00 |
| | | | | **Total** | **$8,100.00** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 374 | 08/31/2022 | $74,415.00 | $28,110.00 | $46,305.00 |
| 470 | 11/01/2022 | $7,840.05 | $0.00 | $7,840.05 |
| 549 | 01/01/2023 | $11,805.00 | $0.00 | $11,805.00 |

### Current Invoice

Invoice # 641 - 02/01/2023

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 641 | 03/03/2023 | $8,100.00 | $0.00 | $8,100.00 |
| | | | Outstanding Balance | $74,050.05 |
| | | | Total Amount Outstanding | $74,050.05 |

| Account | Balance |
|---|---|
| Trust Balance | $0.00 |
| Total Account Balance | $0.00 |

Please make all amounts payable to: The Freedman Firm

Please pay within 30 days.

**PANSKY MARKLE ATTORNEYS AT LAW**
1010 Sycamore Ave., Suite 308
South Pasadena, CA 91030
(213) 626-7300

Tax I.D. No. 95-4224046
STATEMENT FOR PROFESSIONAL SERVICES
PERSONAL AND CONFIDENTIAL

Michael G. Freedman, Esq.
The Freedman Firm PC
800 Wilshire Blvd.
Suite 1050
Los Angeles  CA  90017

Page: 1
05/15/2022
ACCOUNT NO:  81506-02M

General Legal Ethics Consultation

| Date | | Description | HOURS | |
|---|---|---|---|---|
| 04/26/2022 | KC | Email to client regarding scheduling call with E. Pansky. (No Charge) | 0.10 | |
| 04/27/2022 | EAP | Legal ethics consultation regarding conflict issue; notes to file. | 0.30 | 225.00 |
| | | FOR CURRENT SERVICES RENDERED | 0.40 | 225.00 |
| | | TOTAL CURRENT WORK | | 225.00 |
| 05/15/2022 | | Payment from Client Trust Account. Thank you. | | -225.00 |
| | | BALANCE DUE | | $0.00 |

Client Funds

| | | | |
|---|---|---|---|
| 04/26/2022 | | Deposit to Client Trust Account (credit card payment from Michael G. Freedman). | 2,500.00 |
| 05/15/2022 | | Payment from Client Trust Account. Thank you. | -225.00 |
| | | Ending Client Funds Balance | $2,275.00 |

This statement is due and payable when you receive it; please show the ACCOUNT NO. on your check. Any services rendered or costs incurred after the date shown above will be reflected on the next statement.

# Exhibit 3

COURT'S
EXHIBIT NO. ___1___
IDENTIFICATION/EVIDENCE
DKT.# _____
DATE: _____

EAG:NS
F. # 2020R00275

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    PLEA AGREEMENT

        - against -
                                            20 CR 427 (AMD)
DONNELL RUSSELL,

                Defendant.

- - - - - - - - - - - - - - - - -X

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States

Attorney's Office for the Eastern District of New York (the "Office") and DONNELL

RUSSELL (the "defendant") agree to the following:

1.    The defendant will plead guilty to sole count of the above-captioned

indictment, charging a violation of 18 U.S.C. § 2261A(2)(B). The count carries the following

statutory penalties:

a.    Maximum term of imprisonment: 5 years
      (18 U.S.C. § 2261(b)(5)).

b.    Minimum term of imprisonment: 0 years
      (18 U.S.C. § 2261(b)(5)).

c.    Maximum supervised release term: three years, to follow any
      term of imprisonment; if a condition of release is violated, the
      defendant may be sentenced to up to two years without credit
      for pre-release imprisonment or time previously served on post-
      release supervision
      (18 U.S.C. § 3583 (b) & (e)).

d.    Maximum fine:  Greater of $250,000, or twice the gross gain or
      twice the gross loss
      (18 U.S.C. § 3571(b)(2), (b)(3) and (d)).

> e.   Restitution: Mandatory in the full amount of each victim's losses as determined by the Court.
> (18 U.S.C. §§ 3663A and 3664)
>
> f.   $100 special assessment
> (18 U.S.C. § 3013).

The sentence imposed may run consecutively to the sentence imposed in <u>United States v. Donnell Russell,</u> 20 CR 538 (PGG) (S.D.N.Y.).

2.   The defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the "Guidelines" and "U.S.S.G.") is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case. The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence. <u>See</u> 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The Office estimates the likely adjusted offense level under the Guidelines to be 20, which is predicated on the following Guidelines calculation:

| | |
|---|---:|
| Base Offense Level (§2A6.2(a)) | 18 |
| Plus:   Offense involved a pattern of activity involving stalking, threatening or harassing the same victim (§2A6.2(b)) | <u>+2</u> |
| Total: | <u>20</u> |

If the defendant clearly demonstrates acceptance of responsibility, through allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted,

pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 18 and a range of imprisonment of 27 - 33 months, assuming that the defendant falls within Criminal History Category I. Furthermore, if the defendant has accepted responsibility as described above, to the satisfaction of the Office, and if the defendant pleads guilty on or before July 26, 2022, an additional one-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(b), resulting in an adjusted offense level of 17. This level carries a range of imprisonment of 24 - 30 months, assuming that the defendant falls within Criminal History Category I. The defendant stipulates to the above Guidelines calculation.

3.     The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

4.     The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 33 months or below. This waiver is binding without regard to the sentencing analysis used by the Court. The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn. The defendant further waives the right to raise on appeal or on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s).

3

Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the

defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.  The

defendant waives any right to additional disclosure from the government in connection with the

guilty plea.  The defendant agrees that with respect to all charges referred to in paragraphs 1 and

5(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. §

3006A note, and will not file any claim under that law.  The defendant agrees to pay the special

assessment by check payable to the Clerk of the Court at or before sentencing.

> 5.    The Office agrees that:
>
> a.    no further criminal charges will be brought against the defendant for his (1) commission of interstate stalking in or about and between November 2018 and February 2020 against the individuals described in the Indictment as Jane Doe and an immediate family member of Jane Doe, whose identities are known to the defendant, as charged in the sole Count of the Indictment; and (2) participation in a conspiracy to commit interstate stalking in or about and between November 2018 and February 2020 against the individuals described in the Indictment as Jane Doe and an immediate family member of Jane Doe, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq.;

and, based upon information now known to the Office, it will

> b.    take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and
>
> c.    make no motion for an upward departure under the Sentencing Guidelines.

If information relevant to sentencing, as determined by the Office, becomes known to the Office

after the date of this agreement, the Office will not be bound by paragraphs 5(b) and 5(c).

Should it be judged by the Office that the defendant has violated any provision of this agreement,

the defendant will not be released from his plea of guilty but this Office will be released from its

4

obligations under this agreement, including but not limited to: (a) moving for the additional one-level downward adjustment for timely acceptance of responsibility described in paragraph 2 above; and (b) the provisions of paragraphs 5(a)-(c).

6.      This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

7.      Apart from any written proffer agreements, if applicable, no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. Apart from any written proffer agreements, if applicable, this agreement

5

supersedes all prior promises, agreements or conditions between the parties.  To become

effective, this agreement must be signed by all signatories listed below.


Dated: Brooklyn, New York

_July 26_, 2022

> BREON PEACE
> United States Attorney
> Eastern District of New York


By:  _____
     Nadia I. Shihata
     Assistant United States Attorney

Approved by:

_____
Supervising Assistant U.S. Attorney


I have read the entire agreement and discussed it with my attorney.  I understand all of its terms
and am entering into it knowingly and voluntarily.

By: _____
DONNELL RUSSELL
Defendant

Approved by:

_____
Michael Freedman, Esq.
Counsel to Defendant

6

# Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Case No. 1:20-cr-427

United States of America,
Plaintiff-Respondent;

v.

Donnell Russell,
Defendant-Petitioner.

## MEMORANDUM IN SUPPORT OF 28 U.S.C. 2255 PETITION

The Court should vacate Petitioner Donnell Russell's conviction and dismiss this matter because Russell was convicted in violation of his Sixth Amendment right to the effective assistance of counsel.

I. Background.

Russell was sentenced to a 20 month term of imprisonment after pleading guilty to interstate stalking in violation of 18 U.S.C. 2261A(2)(B), 2251(b)(5), 2 and 3551. The relevant background is as follows.

A. Donnell Russell.

Donnell Russell is an artist-turned businessman. Russell grew up on Chicago's Westside. He started his career as a street performer, was discovered, and went on to tour the world in the Riverdance production and other off-Broadway productions. He successfully transitioned from an artist to a businessman. In 2014, Russell established IndyBuild corporation to offer a music community-based Internet platform. In 2018, he founded a not-for-profit , The Altitude Program, that was in the midst of restoring a 5 floor commercial building on Chicago's Westside for the development of a multimedia content fulfillment center. The content fulfillment center would have brought world class recording and video production capabilities to Chicago's Westside and provided an alternative to the street life for the people of that area. This case caused that project to be shutdown.

Russell knew R. Kelly from their street performer days and had become associated with him only shortly before this case. Russell's involvement with R. Kelly began in June 2018 and lasted until May 2019. R. Kelly's sexual misconduct had started and ended well before Russell became involved with R. Kelly.

Russell approached R. Kelly to try and sign him to the IndyBuild platform. R. Kelly knew Russell was a businessman. Based on the trust they had developed as street performers (and based on the fact that R. Kelly was growing increasingly isolated), R. Kelly asked Russell to help him sort out certain legal and financial matters. Russell agreed to do so as an incentive for R. Kelly to sign with IndyBuild. R. Kelly handed Russell a stack of documents. Russell brought the stack back to his apartment and sorted the stack into two piles. The first pile was for music business matters. Russell planned to deal with that pile. The second pile was for sexual.misconduct lawsuits against Kelly. Russell sent that pile to Kelly's attorney, Brian Nix. One of the lawsuits in the "sexual misconduct lawsuit" pile was Faith Rogers' lawsuit against R. Kelly—i.e., the lawsuit at the heart of this case.

B. The Faith Rogers lawsuit.

R. Kelly was engaged in sexual misconduct with underage women, and his illegal activity started to catch up with him. R. Kelly started being the subject of legitimate civil lawsuits based on this sexual misconduct. The Faith Rogers lawsuit was not one of these lawsuits. Faith Rogers is a Texas woman of legal age. She attended one of R. Kelly's concerts, managed to get backstage and had consensual sexual relations with him. She continued to engage in consensual sexual relations with R. Kelly. Faith Rogers' mother, Kelly Rogers, pressured Faith Rogers to pursue a frivolous "tag along" civil claim against R. Kelly. The lawsuit falsely alleged that R. Kelly had forced Faith Rogers into nonconsensual sexual relations and that she was damaged as a result. Faith Rogers filed a lawsuit in Brooklyn, New York, through now-disbarred, criminally convicted, attorney Lydia Hills.

In a process that Russell had no participation in, R. Kelly's attorney, Brian Nix, and members of R. Kelly's public relations team developed a PowerPoint presentation that summarized the evidence rebutting Faith Rodgers' claims. Brian Nix mailed the PowerPoint presentation to Faith Rogers' attorney, Lydia Hills, in Brooklyn, New York. The PowerPoint presentation included cropped photos that Faith Rogers sent to R. Kelly via text message. One of the photos was a cropped photo of a fully-clothed Faith Rogers showing off the results of a breast enhancement surgery that R. Kelly had paid for. Another photo was a selfie that Rogers sent with the apparent motive of enticing R. Kelly to fly her to New York for a music awards show. The PowerPoint presentation included the distasteful statement that Rogers' "extremities" had "not been revealed, yet!" The photos helped rebut the claims in Faith Rogers' lawsuit—though, again, Russell had no knowledge or involvement in the litigation strategy, including the PowerPoint presentation or in mailing the PowerPoint presentation to Lydia Hills. Russell did learn about the mailing well after the fact.

The evidence compiled by Nix demonstrated that Faith Rogers' claims were entirely invented. Her lawsuit was dismissed. New York law enforcement declined to prosecute R. Kelly based on Faith Rogers' claims.

### C. The "Surviving R. Kelly" docuseries

In an independent effort, Russell was addressing Lifetime's imminent publication of the docuseries, "Surviving R. Kelly." The docuseries, when published, threatened to materially impair R. Kelly's brand and his value to the IndyBuild platform. Russell coordinated with the remaining members of R. Kelly's team to develop a strategy to counter the docuseries. They decided to counter it by making Lifetime aware of falsehoods in the proposed docuseries, enforcing a cease and desist letter drafted by attorney Brian Nix against the premiere, and launching a counter public relations campaign.

Russell gathered the tools needed to execute this strategy. One of the tools he gathered was the PowerPoint presentation that the remaining members R. Kelly's team had prepared. Russell sent (or attempted to send, as he inadvertently failed to attach the PowerPoint) the PowerPoint to Lifetime executives to put them on actual notice of their liability for defamation in the event they published Faith Rogers' false claims. Russell attempted to enforce Nix's cease and desist letter against Lifetime and the Neuehouse theater in New York City, where the premiere of the docuseries was occurring. Russell posted the contents of the PowerPoint to a Facebook page he created, which was entitled "Surviving Lies." In his post, Russell omitted the distasteful comment about revealing Faith Rogers' "extremities." Finally, Russell participated in podcast, in which he debunked several of the claims in the Lifetime docuseries.

The information in the PowerPoint was consistent with information that Russell had independently received. Russell had reviewed comments by Faith Rogers' cousin, who stated that Faith Rogers' mom, Kelly Rogers, had a history of setting up celebrity entertainers with accusations of sexual misconduct. Most famously, Kelly Rogers was behind the incident in which a woman known as Summer Bunny had sexual relations with a celebrity rapper, only to turn around and sue him based on accusations of sexual misconduct. Russell was aware of text messages that Faith Rogers sent R. Kelly saying she regretted bringing the lawsuit and wished she hadn't brought it. Russell was aware of interviews in which Kelly Rogers was reported to have told Faith Rodgers that she needed to go "see" R. Kelly again to "get more" evidence. Russell was aware that Faith Rodgers, in an effort to change her image for her lawsuit, had taken down a webpage in which she was selling explicit photos of herself. All of this information suggested that Faith Rogers' lawsuit against R. Kelly was a sham.

Angered by Russell's efforts, Faith Rogers' mom, Kelly Rodgers, called Russell from Texas and berated him with abusive language. Russell told her that as a first lady of the church she shouldn't be talking like that and otherwise told her off. Immediately afterwards, Russell sent Kelly Rogers and Faith Rogers photos from the PowerPoint and told them to drop Faith Rogers' lawsuit or face criminal charges. On later dates Russell sent the pair further similar text messages.

All of Russell's actions occurred in Chicago, Illinois.

Based on these actions, the U.S. Attorney for the Eastern District of Brooklyn indicted Russell for interstate stalking in violation of 18 U.S.C. 2261A(2)(B), 2251(b)(5), 2 and 3551. On the advice of counsel, Russell pled guilty and was sentenced to 20 month term of imprisonment.

### C. Michael Freedman.

Michael Freedman did not provide any meaningful assistance in this case. As the Court is aware, Russell had another criminal case brought against him in the Southern District of New York based on allegations he made a violent threat to disrupt the "Surviving R. Kelly" premiere. After the trial was completed in that case, Freedman told Russell that Freedman would extend his trip for a few days if Russell would agree to go get the Eastern District (this case) case over with. Freedman told Russell that he may as well plead guilty in this case because Russell would have to pay the balance of what he owed Freedman prior to

trial. Freedman further told Russell that counsel for the government wanted to join her family in Hawaii and if Russell didn't change his plea she would miss that opportunity, be angry at Russell, and seek a maximum sentence. Based on this advice, Russell changed his mind and decided to plead guilty.

After his conviction, Russell obtained a copy of his client file from his attorney, Michael Freedman. The client file revealed that Freedman conducted no investigation in this case. Freedman had conducted no research of the facts of the case or Russell's defenses to the government's claim. Freedman's advice that Russell plead guilty was blind advice; Freedman never advised Russell about other options for responding to the government's claims. It appears that Freedman advised Russell to plead guilty because he just wanted to get the case over with versus because he had conducted the research necessary to meaningfully advise Russell of his options.

In particular, Freedman never advised Russell that there were substantial legal defenses to the government's claims. These legal defenses included improper venue, an attack on whether the conduct alleged by the government came within the scope of the charging statutes and as-applied First and Fifth Amendment attacks on the charging statutes.

There was also the defense that Russell was factually innocent of the charges. His actions towards Faith Rodgers were no more distressing than the accusations that Faith Rogers made against R. Kelly.

Had Russell been made aware of the his defenses he would have pursued them. Then and now, Russell believes he was thrown in prison for engaging in a standard response to Lifetime's profit-driven smear campaign against R. Kelly. Russell had substantial business reasons to support the R. Kelly brand and to do so in a professional manner. At the time of Russell's involvement, he was not aware of R. Kelly's extreme sexual misconduct—though had he been aware of it, Russell would have cut ties with R. Kelly and discontinued R. Kelly's partnership with IndyBuild.

By pleading guilty to false charges versus at least putting up a fight, Russell was ending a promising development project in Chicago's Westside. He was also irreparably harming his IndyBuild platform. His reputation was forever tarnished. If Russell had asserted legitimate defenses, fought and lost, at least he could show his supporters that he put up the good fight. Russell had a lot to lose by pleading guilty and had every reason to pursue legitimate legal defenses to the government's claims.

[intentionally left blank]

II. Argument.

The Court and the government should agree that Michael Freedman rendered ineffective assistance of counsel in violation of Russell's Sixth Amendment rights. The Sixth Amendment to the U.S. Constitution guarantees the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 694 (1984). A defendant is entitled to relief if he can show that (1) counsel's performance was defective and (2) a reasonable probability that, but for the deficient performance, the outcome of the proceeding would have been different.

A. Constructive denial of counsel.

Taken as true, Russells' allegation that Freedman advised Russell to plead guilty before Freedman conducted an investigation of Russells' defenses in the case (and was able to advise Russell of the strengths of his defenses) rises to the level of a constructive denial of counsel. The "Sixth Amendment right to counsel guarantees more than just a warm body to stand next to the accused during critical stages of the proceedings." United States ex rel. Thomas v. O'Leary, 856 F.2d 1011, 1015 (7th Cir. 1998).

1. Deficient performance.

Freedman rendered deficient performance. Freedman had a duty to (1) investigate the claims and defenses in the case, Strickland, 466 U.S. at 691 ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."), (2) to advise Russell about the advantages and disadvantages of plea bargaining, Padilla v. Kentucky, 559 U.S. 356, 373 (2010) (failing to advise about the advantages and disadvantages of a guilty plea is deficient performance); and (3) to take all of the ordinary actions one would expect of a criminal defense attorney. Freeman did none of this. He conducted no investigation of Russells' factual and legal defenses and blindly advised Russell to plead guilty. This was deficient performance.

2. Prejudice.

Freedman's constructive denial of counsel presumptively prejudiced Russell. United States v. Cronic, 466 U.S. 648, 658-59 1984) (presumption of prejudice applies when counsel "entirely fails" in his duties as an attorney). Russell can also show actual prejudice. Freedman's failure to investigate Russell's defenses resulted in Russell waiving substantial factual and legal defenses, including: (1) innocence; (2) a Sixth Amendment venue challenge; (3) a Fifth Amendment challenge to the charging statute; and (4) a First Amendment challenge to the charging statute. These defenses are discussed more fully in the following section.

B. Failure to advise.

Counsel in criminal cases are charged with the responsibility of conducting appropriate investigations, both factual and legal, to determine whether matters of defense can be developed. Thomas v. Lockhart, 738 F.2d 304, 308 (8th Cir. 1984); and United States v. Mooney, 497 F.3d 397, 404 (4th Cir. 2007). Case law reflects that strategic decisions cannot be reasonable when counsel failed to investigate his options. Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995). "It is especially important that counsel adequately investigate the case in order that at the very least he can provide minimally competent representation." United States v. Barbour, 813 F.2d 1232, 1234 (D.C. Cir. 1987).

1. Deficient performance.

To Russell's knowledge, Freedman conducted no investigation in this case whatsoever. Russell requested his client file from Freedman and the client file contained no evidence of an investigation of Russell's factual or legal defenses—a prima facie showing that Freedman's investigation was deficient. Freedman's complete and total failure to research the facts and law of this case was deficient performance. See Williams v. Taylor, 529 U.S. 362, 395-98 (2000) (deficient performance for failing to conduct a thorough investigation of the defendant's background); United States v. Grant, 446 Fed. Appx. 473, 476 (3d Cir. 2011) (deficient performance for failing to investigate and advise client that he would be sentenced as a career offender); and Attenfield v. Gibson, 236 F.3d 1215, 1229 (10th Cir. 2004) (defense counsel's failure to investigate rendered any strategy unreasonable).

2. Prejudice.

If Freedman had conducted an investigation, then Freedman would have uncovered and advised Russell about four substantial defenses that were waived by Russell's plea. Absent Freedman's deficient performance, Russell would have asserted these defenses because he had nothing (or very little) to lose by asserting the defenses. These defenses were: (a) innocence; (b) a Sixth Amendment venue challenge; (c) a Fifth Amendment challenge to the charging statute; and (d) a First Amendment challenge to the charging statute.

a. Innocence.

18 U.S.C. 2261A prohibits in relevant part use of the instrumentalities of interstate commerce with the intent to harass or intimidate causing substantial emotional distress. This language does not cover the acts Russell was accused of committing.

The government's theory of the case boils down an attempted end run around the Second Circuit's decision in Kim v. Kimm, 884 F.3d 98 (2d Cir. 2018). In Kim, the Second Circuit held that allegations of litigation misconduct could not form the basis of the federal crimes of mail fraud or extortion. The Second Circuit reasoned that applying statutes not traditionally applied to litigation conduct to criminalize litigation practices could impermissibly undermine the civil justice system. Id. at 104. In so ruling, the Second Circuit joined every other circuit to consider the issue. See Snow Ingredients, Inc. v. SnoWizard, Inc., 833 F.3d 512, 525 (5th Cir. 2016); United States v. Camick, 796 F.3d 1206, 1214-17 (10th Cir. 2015) (reversing mail fraud conviction based on allegations of fraudulent litigation); and United States v. Pendergraft, 297 F.3d 1198, 1204-09 (11th Cir. 2002) (vacating mail fraud conviction arising from allegations of fraudulent litigation). See also I.S. Joseph Co. v. Lauritzen, 751 F.2d 265, 267-68 (8th Cir. 1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary.").

The reasoning in Kim applies with equal force to the federal Interstate Stalking statute. Virtually every litigation involves the use of the instrumentalities of interstate commerce and virtually every action in litigation has a meaningful tendency to "harass" or "intimidate" the opposing party. To allow the federal Interstate Stalking statute to cover allegations of litigation misconduct would be to give rise to the same parade of horrible that led the circuit courts identified above to construe the federal mail fraud and extortion statutes to exclude allegations involving litigation conduct.

The allegations in this case are centered in Faith Rogers' lawsuit against R. Kelly and R. Kelly's response to that lawsuit—both in actual court and in the court of public opinion. Rogers filed a public lawsuit and engaged in a parallel publicity campaign that falsely accused R. Kelly of having sexually assaulted her, having given her a sexually transmitted disease and a variety of other horribles. The actions Russell took and the actions Russell is accused of taking are all within the space of a response to a lawsuit and a corresponding publicity campaign; indeed, Faith Rogers could have sought relief from the judge presiding over her lawsuit if she felt that the other side was behaving inappropriately. We want to encourage the people to invoke the peaceable channels of dispute resolution by encouraging resort to the courts and peaceful speech. To allow the charges in this case to go forward would be to impermissibly undermine the system of peaceable dispute resolution that has served our Nation well since its founding. The government should not be allowed to avoid the Second Circuit's clear decision in Kim by switching its theory of wrongdoing to Interstate Stalking. Had Russell been informed of this defense, he would have pursued it instead of pleading guilty to a non-crime, and he would have had a substantial chance of succeeding. Freedman's deficient performance was prejudicial.

b. Sixth Amendment venue challenge.

Venue is proper for a crime in the district in which the crime was committed. See U.S. Const. amend. VI B; Fed. R. Crim. P. 8; see also U.S. Const. art. iii, sec. 2 cl. 3. When applying the Supreme Court's primary test for identifying criminal venue, the ssential conduct test or locus delicti test, "a court must initially identify the conduct constituting the offense (the nature of the ffense) and then discern the location of the commission of the criminal acts. United States v. Rodriguez-Moreno, 526 U.S. 275, 79 (1999).

No reasonable jury could find venue to be proper in the Eastern District of New York because none of the allegedly criminal cts committed by Russell occurred in the Eastern District of New York. Russell was physically located in Chicago, Illinois at all nes relevant to this case. None of his communications passed through the Eastern District of New York. This case involves a atter between Russell (a Chicagoan) and Faith Rodgers (a Texan). Had Freedman advised Russell that Russell could nallenge venue, then Russell would have done so. For the foregoing reasons, Russell's challenge would have been highly ely to succeed. Freedman's failure to research a venue defense or advise Russell about it was prejudicial.

c. Fifth Amendment challenge to 18 U.S.C. 2261A.

A statute is void for vagueness under the Fifth Amendment if it is (1) so vague that if fails to give ordinary people fair notice of the conduct it punishes, or (2) is so standardless that it invites arbitrary enforcement. Johnson v. United States, 576 U.S. 591, 595 (2015).

Section 2261A authorizes the government to imprison someone who uses interstate communications with the intent to harass and causes substantial emotional distress. As applied to Russell, this statute is void for vagueness. Section 2261A allowed the federal government to imprison Russell for presenting facts in opposition false claims that were made in court, on social media and on CBS' This Morning. It is "harassing" and "emotionally distressful" to be challenged in the media, but that is true on all sides of a public relations battle. As this case demonstrates, section 2261A contains no standards to prevent the statute from being used as a tool in a purely arbitrary manner for the government to silence speech it does not like. The statute is void as applied to Russell. Had Russell been made aware of this defense he would have pursued it. Freedman's deficient performance was prejudicial.

d. First Amendment challenge to 18 U.S.C. 2261A.

The Supreme Court's recent decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. ___, 213 L. Ed. 387 (2022) clarified the standard for reviewing laws that restrict constitutionally protected activity. Though Bruen involved a Second Amendment challenge, the Court expressly noted that the "Second Amendment standard accords with how we protect other constitutional rights" and cited First Amendment decision to make the point.

Under Bruen, the standard for applying the First Amendment is as follows: when the First Amendment's plain text covers and ndividual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of regulating expressive activity.

The First Amendment's plain text covers Russell's conduct. The First Amendment provides: Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. U.S. Const. amend. I.

The plain text of the First Amendment covered Russell's charged conduct. Russell was charged based on his speech in ebutting the allegations that Faith Rogers and others put into the national spotlight. To the extent the government's charges elate to the communication that was sent to Faith Rogers' attorney, then Russell's conduct is protected petitioning activity.

The burden thus falls on the government to show that section 2261A is consistent with the Nation's historical tradition of egulating First Amendment protected activity. The government cannot do so. There is no historical basis for prosecuting people n the manner Russell has been prosecuted here. Section 2261A must fail under the First Amendment as applied to Russell. If ʀussell acted inappropriately, "the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary." I.S. oseph Co. 751 F.2d at 266-67. Russell would have pursued a First Amendment defense had Freedman performed effectively. reedman's deficient performance was prejudicial.

For the reasons set forth above, Russell was convicted in violation of his Sixth Amendment right to the effective assistance f counsel.

. Conclusion.

The Court should grant Russell's motion.

ɔspectfully submitted,

ɔnriell Russell

Dated: _Sept 12, 2023_

# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 1:20-cr-538

United States of America,
    Plaintiff-Respondent,

v.

Donnell Russell,
    Defendant-Petitioner.

## MEMORANDUM IN SUPPORT OF 28 U.S.C. 2255 PETITION

The Court should vacate Petitioner Donnell Russell's conviction or, at a minimum, set an evidentiary hearing because Russell was convicted in violation of his Sixth Amendment right to the effective assistance of counsel. Specifically, Russell's attorney was ineffective for violating Russell's fundamental right to testify on his own behalf and by failing to present evidence to the jury that glaringly points to Michael Williams as the culpable party in this case.

### I. Background.

Russell stands convicted of calling in a violent threat to disrupt the premiere of "Surviving R. Kelly" at the Neuehouse theater in New York City. Russell agrees that he made multiple calls to the Neuehouse theater that day, but would testify that all of his calls were purely peaceful call relating to a cease and desist letter that Russell was attempting to enforce against Lifetime, the producer of "Surviving R. Kelly." The evidence glaringly points to Michael Williams as being the "threat" caller. Williams is serving a 96-month sentence in the Federal Bureau of Prisons for setting fire to the car of a survivor featured in "Surviving R. Kelly." Williams was also in the vicinity of the "Surviving R. Kelly" premiere and was described as brandishing his gun at some of the survivors at a local resturant a few hours after the premiere was disrupted.

### A. Donnell Russell.

Donnell Russell is an artist-turned businessman. Russell grew up on Chicago's Westside. He started his career as a street performer, was discovered, and went on to tour the world in the Riverdance production and other off-Broadway productions. He successfully transitioned from an artist to a businessman. In 2014, Russell established IndyBuild corporation to offer a music community-based platform. In 2018, he founded a not-for-profit , The Altitude Program, that was in the midst of restoring a 5 floor commercial building on Chicago's Westside for the development of a multimedia content fulfillment center. The content fulfillment center would have brought world class recording and video production capabilities to Chicago's Westside and provided an alternative to the street life for the people of that area. This case caused that project to be shutdown.

Russell knew R. Kelly from their street performer days and had become associated with him only shortly before this case. Russell had approached R. Kelly to try and sign him to the IndyBuild platform. R. Kelly knew Russell was a businessman. Based on the trust they had developed as street performers (and based on the fact that R. Kelly had not been paying his attorneys), R. Kelly asked Russell to help him sort out certain legal and financial matters. Russell agreed to do so as an incentive for R. Kelly to sign with IndyBuild. One of the matters on R. Kelly's desk was Lifetime's alleged intellectual property violations and tortious behavior in relation to the "Surviving R. Kelly" production, which was scheduled to premiere on December 4, 2018.

### B. The Events of December 4, 2018.

On December 4, 2018, Lifetime was to screen its premiere of the "Surviving R. Kelly" docuseries at the Neuehouse theater in New York City. The docuseries was based on allegations of sexual misconduct. These allegations would have materially impaired R. Kelly's brand and image. R. Kelly's attorney drafted a cease and desist letter to address the Lifetime docuseries' alleged intellectual property violations and tortious activities. Russell was asked to enforce the letter against the premiere.

Thus, on December 4, 2018, Russell repeatedly called the Neuehouse theater in an effort to prevent the screening from going forward. Russell's strategy was to attempt to enforce the cease and desist letter drafted by attorney Brian Nix against Lifetime and the Neuehouse theater. All of Russell's calls were purely peaceful. Russell never threatened anyone with violence. According to the Neuehouse employee who was fielding calls that day, Adrian Krasniqi, the person who was making the "cease and desist" calls "spoke very professionally in a legal business-like manner." That caller was Russell.

On December 4, 2018, Neuehouse received a call from another man who, according to Mr. Krasniqi, had a "deep and thuggish" voice. The caller had a Brooklyn accent and sounded like he was outside, based on background noise that was audible on the call. This caller made a violent threat against the "Surviving R. Kelly" screening. Russell did not make that call.

C. The Trial.

At trial, the government called Adrian Krasniqi as a witness. Mr. Krasniqi testified that the "cease and desist" call and the "threat" caller had two distinctively different voices. Mr. Krasiniqi described the attributes of the "cease and desist" caller and the "threat" caller and these descriptions were in sharp contrast from one another.

When Russell heard Mr. Krasniqi's testimony, he leaned over to his attorney, Michael Freedman and told him that he wanted to testify. Russell was confident that when Mr. Krasniqi, the jury, the Court and the government heard Russell speak, it would become clear that Russell was the "cease and desist" caller and not the "threat" caller. Indeed, Russell could have testified as to the details of the "cease and desist" calls, having made the calls himself. In no event would anyone have concluded that Russell had a Brooklyn accent, spoke in a thuggish vernacular or sounded like Method Man. Freedman passed a note back to Russell saying they would discuss later.

After court adjourned for the day, Freedman walked Russell and his wife back to the Millennium hotel. On that walk, the parties discussed the pros and cons of Russell taking the stand. Freedman was opposed to the idea, warning that it could open Pandora's Box. Russell was unfamiliar with the metaphor, but after it was explained to him, Russell agreed that he and his wife would discuss the matter further and let Freedman know what he decided. That night, Russell and his wife ordered pizza and discussed the matter further. They concluded that Russell must testify. Russell texted Freedman with his decision and the reasons for it in the early morning hours—between 2:00 and 3:00 a.m., as Russell recalls.

Russell and his wife met Freedman for court. Russell was expecting to take the stand to testify. The government rested its case. Then Freedman rested Russell's case without calling Russell. When Russell later questioned Freedman about that, Freedman explained that he decided not to call Russell because, in Freedman's view, the government had not met its burden of proof against Russell.

The jury deliberated and found Russell guilty.

D. Michael Williams.

The evidence glaringly points to Michael Williams as being the "threat" caller. As Russell understands it, Williams called the Neuehouse theater at 6:59 p.m. on December 4, 2018 from cell phone number 305-747-8186, as shown on the theater's caller ID. The number on the phone's display screen showed the name Kiona Reese. This mismatch between the name on the caller ID and the male voice on the phone is ostensibly why Mr. Krasniqi referred to the "threat" caller as an anonymous caller. Also, by Cavonetty "Kash" Jones' own admission in an April 8, 2023, published Youtube interview, she and her cousin, Michael "Mike" Williams were en route (outside) to the hotel where they met with at least two of the "Survivors" that evening after the "threat" call was made and the theater had been evacuated.

Williams is currently incarcerated in the Federal Bureau of Prisons for arson, serving a 96-month sentence for setting fire to the car of one of the survivors and a witness in case 19-cr-286, United States v. Kelly. Transcripts from the case state that Williams was present in New York City on the day of the premiere and was described in the subsequent documentary as well as the United States v. R. Kelly trial as intimidating survivors by flashing a gun. The activities by Williams were enough incentive for Kash Jones to testify against Russell while concealing her cousin's (Williams') activities and involvement before the grand jury.

Freedman did not present any information relating to Williams at the trial.

II. Argument.

The Sixth Amendment to the United States Constitution guarantees the right to effective counsel. Strickland v. Washington, 466 U.S. 668 (1984). A defendant is entitled to a new trial if he can show (1) that trial counsel's performance was deficient; and (2) a reasonable probability that, but for the deficient performance, the outcome of the proceeding would have been different.

A. Freedman was ineffective for prohibiting Russell from exercising his right to testify.

The "burden of establishing that the defendant is informed of the nature and existence of the right to testify ... is a component of the effective assistance of counsel." Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997). The right to testify is personal to the defendant and may not be waived by counsel. Chang v. United States, 250 F.3d 79, 82 (2d Cir. 2001). The right is not waived solely by virtue of the defendant's failure to object.

1. Deficient performance.

Freedman's performance was deficient because he failed to advise Russell of his fundamental right to testify and because he failed to honor Russell's decision to exercise his right to testify. Brown, 124 F.3d at 79.

2. Prejudice.

Freedman's deficient performance was prejudicial because Russell's testimony would have exonerated him. Russell's demeanor, his vocabulary, his professional background, his Midwestern accent and his detailed knowledge of the substance of the "cease and desist" calls would have immediately registered with everyone in the courtroom and made clear that Russell was the "cease and desist" caller but not the "threat" caller. Moreover, Russell could have truthfully testified that he never called in a threat to the Neuehouse theater. In particular, Krasniqi could have observed Russell and heard the substance and tone of Russell's testimony. Krasniqi would have immediately known that Russell was the "cease and desist" caller, but not the threat caller.

For these reasons, Russell was convicted in violation of his Sixth Amendment right to the effective assistance of counsel.

B. Freedman was ineffective for failing to present evidence that glaringly points to Michael Williams as the "threat" caller.

Trial counsel can be ineffective for failing to investigate and present a critical aspect of the defense. Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001); Rompilla v. Beard, 545 U.S. 374, 383 (2005) (failing to investigate prior conviction file when defendant's felony history was critical to the case); Beltran v. Cockrell, 294 F.3d 730 (5th Cir. 2002) (ineffective assistance where attorney failed to use exculpatory evidence related to eyewitness identification); Rickey v. Bradshaw, 498 F.3d 344, 361-64 (6th Cir. 2007) (counsel's failure to argue that fire was caused by accident instead of arson was ineffective assistance).

1. Deficient performance.

Freedman's failure to investigate Michael Williams as the "threat caller" or present the evidence that glaringly points to Michael Williams as the "threat" caller was deficient performance. Attorneys have a duty to investigate claims and defenses and zealously advocate for their clients. Freedman had no strategic reason to avoid investigating and presenting evidence of Williams' likely culpability.

2. Prejudice.

Freedman's deficient performance was prejudicial. The omitted evidence would have, at a minimum, created reasonable doubt in the minds of the jury.

C. A short evidentiary hearing may assist the Court in resolving Russell's 2255 motion.

Russell respectfully submits that the Court should hold an evidentiary hearing at which Mr. Krasniqi can hear Russell speak. Russell believes that Mr. Krasniqi will immediately identify Russell as the "cease and desist" caller and not the "threat" caller. If

Mr. Krasniqi has any doubts, then he should be allowed to hear Mr. Williams' voice too. Williams is incarcerated in the Federal Bureau of Prisons, which records and stores inmate phone calls. Candid phone recordings of Williams (and Russell too, for that matter) are readily available to the government. A short evidentiary hearing could clear this matter up in a matter of an hour or two and correct a significant injustice.

III. Conclusion.

The Court should grant Russell's motion.

Respectfully submitted,                                          Dated: _____

_____
Donnell Russell
1974-510 Unit F
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

# Exhibit 6

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CRIMINAL DOCKET FOR CASE #: 1:20-cr-00427-AMD-1

Case title: USA v. Russell

Date Filed: 10/08/2020

Related  Case: 1:23-cv-06985-AMD

Date Terminated: 11/21/2022

Magistrate judge case number: 1:20-mj-00239-PK

Assigned to: Judge Ann M Donnelly

### Defendant (1)

**Donnell Russell**
Federal Correctional Insitution
P.O. Box 1000
Sandstone, MN 55072
*TERMINATED: 11/21/2022*
*also known as*
Don Russell
*TERMINATED: 11/21/2022*
*also known as*
Colon Dunn
*TERMINATED: 11/21/2022*

represented by **Douglas G. Morris**
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718-330-1200
Fax: 718-855-0760
Email: douglas_morris@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Nora K. Hirozawa**
Federal Defenders of New York
One Pierrepont Plaza
Ste 16th Floor
Brooklyn, NY 11201
718-330-1200
Email: nora_hirozawa@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Michael Freedman**
The Freedman Firm
10100 Santa Monica Boulevard
Suite 300
Los Angeles, CA 90067
310-285-2210
Fax: 310-425-8845
Email: michael@thefreedmanfirm.com
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**

INTERSTATE STALKING (Title 18,
United States Code, Sections 2261A(2)(B),
2261(b)(5), 2 and 3551 et seq.)
(1)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Highest Offense Level (Terminated)**

None

**Complaints**

18 USC 2261 (A)

**Disposition**

Twenty(20) months imprisonment. One
year supervised release. $100 special
assessment. $5000 fine.

**Disposition**

**Disposition**

---

**Plaintiff**

USA

represented by **Nadia Shihata**
United States Attorneys Office
Eastern District of NY
271 Cadman Plaza East
Brooklyn, NY 11201
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna L. Karamigios**
DOJ-USAO
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6225
Email: Anna.Karamigios@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Elizabeth Geddes**
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
718-254-6430

Case 1:25-cv-00984-PKC-LKE Document 1 Filed 02/19/25 Page 71 of 80 PageID #: 71

Fax: 718-254-6478
Email: liz@shihatageddes.com
*ATTORNEY TO BE NOTICED*

**Maria E. Cruz Melendez**
U.S. Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6408
Fax: 718-254-6076
Email: maria.cruzmelendez@skadden.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/09/2020 | 1 | (Electronic) SEALED COMPLAINT and affidavit in support of arrest warrant as to Donnell Russell (1). Signed by Judge Peggy Kuo dtd 3/9/2020. (Attachments: # 1 Sealing Cover Sheet) (Yuen, Sui-May) [1:20-mj-00239-PK] (Entered: 03/10/2020) |
| 08/11/2020 | 3 | Order to Unseal Case as to Donnell Russell.. Ordered by Magistrate Judge Peggy Kuo on 8/11/2020. (Sica, Michele) [1:20-mj-00239-PK] (Entered: 08/12/2020) |
| 08/13/2020 | | Minute Entry for proceedings held before Magistrate Judge Peggy Kuo: for anArraignment as to Donnell Russell (1) Count Complaint held on 8/13/2020, Attorney Appointment Hearing as to Donnell Russell held on 8/13/2020, Initial Appearance as to Donnell Russell held on 8/13/2020. All parties present via teleconference. AUSA Nadia Shihata, Maria Cruz Melendez and Elizabeth Geddes, Federal defender Douglas Morris for the defendant. preliminary hearing waived. Bail package presented on consent of both parties. The defendant was sworn and advised of his bond conditions and signed the bond. The defendant was released (Court Reporter Holly Driscoll.) Log 2:03-2:20 (Sica, Michele) [1:20-mj-00239-PK] (Entered: 08/13/2020) |
| 08/13/2020 | 5 | CJA 23 Financial Affidavit by Donnell Russell (Sica, Michele) [1:20-mj-00239-PK] (Entered: 08/13/2020) |
| 08/13/2020 | 6 | ORDER Setting Conditions of Release as to Donnell Russell (1) 75,000. Ordered by Magistrate Judge Peggy Kuo on 8/13/2020. (Sica, Michele) [1:20-mj-00239-PK] (Entered: 08/13/2020) |
| 08/14/2020 | 7 | Letter *dated 8/14/20 re Bond No-Contact List (under seal)* as to Donnell Russell (Shihata, Nadia) [1:20-mj-00239-PK] (Entered: 08/14/2020) |
| 09/04/2020 | 9 | ORDER TO CONTINUE - Ends of Justice as to Donnell Russell Time excluded from 9/10/20 until 10/11/20.. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 9/4/2020. (Sica, Michele) [1:20-mj-00239-PK] (Entered: 09/04/2020) |
| 10/01/2020 | 10 | NOTICE/"LETTER Rogatory for relief under Hague Convention Title 18 sec. 1781," filed Donnell Russell. (See Page #5) (Received for Docketing on 10/5/2020) (Galeano, Sonia) Modified on 10/5/2020 (Galeano, Sonia). [1:20-mj-00239-PK] (Entered: 10/05/2020) |

Case 1:25-cv-00984-PKC-LKE   Document 1   Filed 02/19/25   Page 72 of 80 PageID #: 72

| 10/08/2020 | 11 | INDICTMENT as to Donnell Russell (1) count(s) 1. (Attachments: # 1 Criminal Information Sheet) (Almonte, Giselle) (Entered: 10/08/2020) |
|---|---|---|
| 10/08/2020 | 12 | Notice of Related Case. (Almonte, Giselle) (Entered: 10/08/2020) |
| 10/09/2020 | | ORDER REASSIGNING CASE as to Donnell Russell. Reassigned to Judge Ann M Donnelly. Chief Judge Roslynn R. Mauskopf no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Ordered by Chief Judge Roslynn R. Mauskopf on 10/9/2020. (Bowens, Priscilla) (Entered: 10/09/2020) |
| 10/09/2020 | 13 | NOTICE OF ATTORNEY APPEARANCE Nadia Shihata appearing for USA. (Shihata, Nadia) (Entered: 10/09/2020) |
| 10/10/2020 | 14 | NOTICE OF ATTORNEY APPEARANCE Maria E. Cruz Melendez appearing for USA. (Cruz Melendez, Maria) (Entered: 10/10/2020) |
| 10/21/2020 | | SCHEDULING ORDER: A Telephone Arraignment is scheduled for **October 22, 2020 at 2:00 p.m.** before Magistrate Judge Peggy Kuo. The parties are directed to call toll free **(877) 336-1274** and input the Access Code **1453850** at the time of the Conference. No additional security code is needed. Once all parties are on the line, the call will be connected. (The parties are reminded that, pursuant to Local Civil Rule 1.8, they may not independently record any court proceedings. A transcript of the proceedings may be ordered from the Clerk's Office.) Ordered by Magistrate Judge Peggy Kuo on 10/21/2020. (O'Neil-Berven, Ryan) (Entered: 10/21/2020) |
| 10/21/2020 | 15 | NOTICE OF ATTORNEY APPEARANCE Elizabeth Geddes appearing for USA. (Geddes, Elizabeth) (Entered: 10/21/2020) |
| 10/22/2020 | 16 | Letter *dated 8/27/20 re Rule 16 Discovery* as to Donnell Russell (Shihata, Nadia) (Entered: 10/22/2020) |
| 10/22/2020 | | Minute Entry for proceedings held before Magistrate Judge Peggy Kuo. Arraignment held by Telephone pursuant to the CARES Act and Administrative Order 2020-13-1, and with consent of the Defendant on October 22, 2020. AUSA **Nadia Shihata** was present. Attorney **Douglas Morris** appeared on behalf of Defendant Russell. Defendant Donnell Russell was present. Defendant arraigned on the Indictment. Defendant waived reading of the indictment. Not Guilty Plea entered to sole count of the Indictment. Defendant reminded to abide by all bond conditions. A telephone status conference is scheduled for **November 13, 2020 at 10:30 a.m. EST** before Judge Donnelly. Time is excluded from October 22, 2020 to November 13, 2020 in the interest of justice for plea negotiations. (FTR LOG: 2:05 - 2:11) (O'Neil-Berven, Ryan) (Entered: 10/22/2020) |
| 10/22/2020 | | ORDER TO CONTINUE - Ends of Justice as to Donnell Russell. Time excluded in the interest of justice for plea negotiations from October 22, 2020 until November 13, 2020. Ordered by Magistrate Judge Peggy Kuo on 10/22/2020. (O'Neil-Berven, Ryan) (Entered: 10/22/2020) |

Case 1:25-cv-00984-PKC-LKE    Document 1    Filed 02/19/25    Page 73 of 80 PageID #: 73

| 11/13/2020 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held on 11/13/2020. Appearances by AUSA Nadia Shihata and AUSA Maria Cruz Melendez. Douglas Morris (Federal Defenders) for defendant Russell (on bond, present on phone). Case called. Discussion held. Next conference set for 2/4/2020 at 10:30 a.m. Each party should call the following conference number: (888) 363-4734, and use access code: 9057625. Time excluded from 11/13/2020 to 2/4/2021. (Court Reporter Andronikh Barna.) (Greene, Donna) (Entered: 11/13/2020) |
| 11/16/2020 | 17 | ORDER entered pursuant to Federal Rule of Criminal Procedure 5(f) to confirm the prosecutions disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations. Ordered by Judge Ann M. Donnelly on 11/16/2020. (Greene, Donna) (Entered: 11/16/2020) |
| 02/04/2021 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held on 2/4/2021. Appearances by AUSA Nadia Shihata and AUSA Maria Cruz Melendez. Douglas Morris (Federal Defender) for defendant Russell (present via telephone on bond). Case called. Discussion held. Next status conference set for 5/17/2021 at 10:30 a.m. and will be held via telephone. Each party should call the following conference number: (888) 363-4734, and use access code: 9057625. Time excluded from 2/4/2021 to 5/17/2021. (Court Reporter Lisa Schmid.) (Greene, Donna) (Entered: 02/04/2021) |
| 02/23/2021 | 18 | Letter *dated 2/23/21 re Rule 16 Discovery* as to Donnell Russell (Shihata, Nadia) (Entered: 02/23/2021) |
| 05/17/2021 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held on 5/17/2021. Appearances by AUSA Nadia Shihata and AUSA Maria Cruz Melendez. Douglas Morris (Federal Defender) for defendant Russell (present via telephone on bond). Case called. Discussion held. Next status conference set for 9/23/2021 at 10:30 a.m. and will be held via telephone. Each party should call the following conference number: (888) 363-4734, and use access code: 9057625. Time exclude from 5/17/2021 to 9/23/2021. (Court Reporter David Roy.) (Greene, Donna) (Entered: 05/17/2021) |
| 09/20/2021 | 19 | MOTION to Continue *Status Conference* by Donnell Russell. (Morris, Douglas) (Entered: 09/20/2021) |
| 09/20/2021 | | ORDER granting 19 Motion to Continue as to Donnell Russell (1). Status Conference set for 9/23/2021 is reset for 10/12/2021 at 10:30 a.m., in Courtroom 4G North. Time excluded from 9/23/2021 to 10/12/2021. Ordered by Judge Ann M. Donnelly on 9/20/2021. (Greene, Donna) Modified on 9/20/2021 to add excluded time (Greene, Donna). (Entered: 09/20/2021) |
| 10/04/2021 | | RESCHEDULING ORDER as to Donnell Russell. Status Conference set for 10/12/2021 at 10:30 a.m. will instead be held at 11:00 a.m. Ordered by Judge Ann M. Donnelly on 10/4/2021. (Greene, Donna) (Entered: 10/04/2021) |
| 10/08/2021 | 20 | Letter *dated 10/8/21 re Rule 16 discovery* as to Donnell Russell (Shihata, Nadia) (Entered: 10/08/2021) |
| 10/12/2021 | | SCHEDULING ORDER as to Donnell Russell. The status conference set for 10/12/2021 at 11:00 a.m., will proceed as scheduled and is converted to a |

| | | |
|---|---|---|
| | | telephone status conference. Each party should call the following conference number: (888) 363-4734, and use access code: 9057625. Ordered by Judge Ann M. Donnelly on 10/12/2021. (Greene, Donna) (Entered: 10/12/2021) |
| 10/12/2021 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held via telephone on 10/12/2021. Appearances by AUSA Nadia Shihata, AUSA Maria Cruz Melendez, and AUSA Elizabeth Geddes. Douglas Morris (Federal Defender) for defendant Russell (present via telephone on bond). Case called. Discussion held. Next status conference set for 11/18/2021 at 11:30 a.m., and will be held via telephone. Each party should call the following conference number: (888) 363-4734, and use access code: 9057625. Time excluded in the interest of justice from 10/12/2021 to 11/18/2021 so counsel can go over newly received discovery. (Court Reporter Michele Nardone.) (Greene, Donna) (Entered: 10/12/2021) |
| 11/05/2021 | 21 | NOTICE OF ATTORNEY APPEARANCE: Nora K. Hirozawa appearing for Donnell Russell (Hirozawa, Nora) (Entered: 11/05/2021) |
| 11/18/2021 | | Minute Entry for proceedings held before Judge Ann M Donnelly: Status Conference as to Donnell Russell held via telephone on 11/18/2021. Appearances by AUSA Nadia Shihata and AUSA Maria Cruz Melendez. Nora Hirozawa (Federal Defenders) for defendant Russell (present on bond). Case called. Discussion held. Next status conference set for 1/13/2021 at 12:00 p.m., and will be held via telephone. Each party should call the following conference number: (888) 363-4734, and use access code: 9057625.<br><br>Jury selection and trial set for 5/23/2022 at 9:30 a.m. in Courtroom 4G North. Motions in limine are due by 4/25/2022 and oppositions are due by 5/2/2022. The parties joint requests to charge, voire dire, and verdict sheets are due by 5/9/2022. The parties are directed to the Courts Individual Practices and Rules. Final pretrial conference set for 5/19/2022 at 2:30 p.m., in Courtroom 4G North. Time excluded in the interest of justice from 11/18/2021 to 5/23/2022 because counsel is just getting up to speed and want to have a chance to get to know her client. (Court Reporter Charleane Heading.) (Greene, Donna) (Entered: 11/30/2021) |
| 12/23/2021 | 22 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Donnell Russell held on 10-12-21, before Judge Donnelly. Court Reporter/Transcriber M.Nardone. Email address: mishrpr@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 1/13/2022. Redacted Transcript Deadline set for 1/23/2022. Release of Transcript Restriction set for 3/23/2022. (Nardone, Michele) (Entered: 12/23/2021) |
| 01/13/2022 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held via telephone on 1/13/2022. Appearances by AUSA Maria Cruz Melendez, AUSA Nadia Shihata, and AUSA Elizabeth Geddes. Nora Hirozawa (Federal Defenders) for defendant Russell (present on bond). Case called. Discussion held.<br><br>Jury selection and trial set for 5/23/2022 is resent for 8/31/2022 at 9:30 a.m., in |

| | | |
|---|---|---|
| | | Courtroom 4G North. Motions in limine are due by 8/3/2022 and oppositions are due by 8/10/2022. The parties joint requests to charge, voire dire, and verdict sheets are due by 8/17/2022. The parties are directed to the Courts Individual Practices and Rules. Final pretrial conference set for 8/25/2022 at 11:00 a.m., in Courtroom 4G North. Next status conference set for 3/2/2022 at 12:00 p.m. and will be held via telephone. Each party should call the conference number: (888) 363-4734, and use access code: 9057625. Time excluded from 5/23/2022 to 8/31/2022 in the interest of justice so that the parties can continue engaging in discussion about the case. (Court Reporter Charleane Heading.) (Greene, Donna) (Entered: 01/13/2022) |
| 03/01/2022 | | RESCHEDULING ORDER as to Donnell Russell. Due to a scheduling conflict the status conference set for 3/2/2022 at 12:00 p.m. will instead be held at 12:30 p.m. Ordered by Judge Ann M. Donnelly on 3/1/2022. (Greene, Donna) (Entered: 03/01/2022) |
| 03/02/2022 | 23 | Letter *Requesting Adjournment of Status Conference to 3/22/22 at 12 p.m. (Unopposed)* as to Donnell Russell (Hirozawa, Nora) (Entered: 03/02/2022) |
| 03/02/2022 | | ORDER as to Donnell Russell(1). The status conference set for 3/2/2022 is reset for 3/22/2022 at 12:00 p.m., and will be held via telephone. Each party should call the conference number: (888) 363-4734, and use access code: 9057625. Time excluded from 3/2/2022 to 3/22/2022 in the interest of justice so that the parties can continue engaging in discussion about the case. Ordered by Judge Ann M. Donnelly on 3/2/2022. (Greene, Donna) (Entered: 03/02/2022) |
| 03/22/2022 | 24 | Letter *dated 3/22/22 re Rule 16 Discovery* as to Donnell Russell (Shihata, Nadia) (Entered: 03/22/2022) |
| 03/22/2022 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held via telephone on 3/22/2022. Appearances by AUSA Nadia Shihata and AUSA Maria Cruz-Melendez. Nora Hirozawa (Federal Defenders) for defendant Russell (present on bond). Case called. Discussion held. Next status conference set for 3/30/2022 at 2:30 p.m., and will be held via telephone. Each party should call the following conference number: (888) 363-4734, and use access code: 9057625. Time is excluded so Mr. Russell can retain counsel. (Court Reporter Linda Danelczyk.) (Greene, Donna) (Entered: 03/22/2022) |
| 03/30/2022 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held via telephone on 3/30/2022. Appearances by AUSA Nadia Shihata and AUSA Maria Cruz-Melendez. Nora Hirozawa (Federal Defenders) for defendant Russell (present on bond). Case called. Discussion held. Next status conference set for 4/13/2022 at 11:30 a.m., and will be held via telephone. Each party should call the following conference number: (888) 363-4734, and use access code: 9057625. Time is excluded so Mr. Russell's new lawyer can get on board. (Court Reporter Andronikh Barna.) (Greene, Donna) (Entered: 03/30/2022) |
| 04/12/2022 | 25 | MOTION to Appear Pro Hac Vice Filing fee $ 150, receipt number BNYEDC-15468650. by Donnell Russell. (Freedman, Michael) (Entered: 04/12/2022) |
| 04/13/2022 | | ORDER as to Donnell Russell (1) granting 25 Motion for Leave to Appear. The attorney shall register for ECF, registration is available online at www.pacer.gov. |

| | | |
|---|---|---|
| | | Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure the 150 admission fee be submitted to the Clerks Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Judge Ann M. Donnelly on 4/13/2022. (Greene, Donna) (Entered: 04/13/2022) |
| 04/13/2022 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held via telephone on 4/13/2022. Appearances by AUSA Maria Cruz-Melendez and AUSA Nadia Shihata. Nora Hirozawa (Federal Defenders) and Michael Freedman (Retained) for defendant Russell (present on bond). Case called. Discussion held. (Court Reporter Sophie Nolan.) (Greene, Donna) (Entered: 04/13/2022) |
| 04/18/2022 | 26 | Letter *dated 4/18/22 advising Court of potential conflict of interest and requesting Curcio Hearing* as to Donnell Russell (Shihata, Nadia) (Entered: 04/18/2022) |
| 04/18/2022 | | SCHEDULING ORDER as to Donnell Russell. Curcio Hearing set for 5/19/2022 at 2:00 p.m., in Courtroom 4G North. Ordered by Judge Ann M. Donnelly on 4/18/2022. (Greene, Donna) (Entered: 04/18/2022) |
| 05/19/2022 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Appearances by AUSA Nadia Shihata, AUSA Maria Cruz Melendez; and Michael Freedman, retained, for defendant (on bond). Case called. Discussion held. The Court conducted an inquiry into the nature of Mr. Freedman's prior discussions with a prospective client, and advised the defendant of the potential conflicts that could arise from Mr. Freedman's prior discussions. The defendant is directed to consider whether he wants to proceed with current counsel, or would like to have a conflict-free attorney appointed. The defendant will consult with Ms. Hirozawa of the Federal Defenders, and inform the Court of how he wishes to proceed at the next conference scheduled for 5/25/2022 at 3:30 p.m., via telephone: 888-363-4734, access code: 9057625. (Court Reporter Stacy Mace.) (Greene, Donna) (Entered: 05/23/2022) |
| 05/25/2022 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status Conference as to Donnell Russell held via telephone on 5/25/2022. Appearances by AUSA Nadia Shihata and AUSA Maria Cruz Melendez. Nora Hirozawa (Federal Defenders) and Michael Freedman (Retained) for defendant Russell (present on bond). Case called. Discussions held. After being advised of the potential conflicts and consequences that could arise from his present representation by attorney Michael Freedman, the defendant affirmed on the record his decision to continue with Mr. Freedman. Nora Hirozawa relieved with the thanks of the Court. (Court Reporter Charleane Heading.) (Greene, Donna) (Entered: 05/26/2022) |
| 06/23/2022 | 27 | Letter *dated 6/23/22 re Rule 16 Discovery* as to Donnell Russell (Shihata, Nadia) (Entered: 06/23/2022) |
| 07/14/2022 | 28 | NOTICE OF ATTORNEY APPEARANCE Anna L. Karamigios appearing for USA. (Karamigios, Anna) (Entered: 07/14/2022) |
| 07/25/2022 | | SCHEDULING ORDER as to Donnell Russell. Change of Plea Hearing set for 7/26/2022 at 4:00 p.m., in Courtroom 4G North. Ordered by Judge Ann M. Donnelly on 7/25/2022. (Greene, Donna) (Entered: 07/25/2022) |

| | | |
|---|---|---|
| 07/26/2022 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Change of Plea Hearing as to Donnell Russell held on 7/26/2022. Appearances by AUSA Nadia Shihata and Michael Freedman (Retained) for defendant Russell (present on bond). Case called. Defendant sworn, informed of rights, and waives trial before the District Court. Defendant Donnell Russell (1) enters a guilty plea to Count 1. The Court accepts the guilty plea. Sentencing set for 11/17/2022 at 11:00 a.m., in Courtroom 4G North. (Court Reporter Anthony Frisolone.) (Greene, Donna) (Entered: 07/31/2022) |
| 11/03/2022 | 30 | SENTENCING MEMORANDUM by Donnell Russell (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Freedman, Michael) (Entered: 11/03/2022) |
| 11/10/2022 | 31 | SENTENCING MEMORANDUM by USA as to Donnell Russell (Karamigios, Anna) (Entered: 11/10/2022) |
| 11/16/2022 | 33 | Letter *supplement to the government's sentencing submission* as to Donnell Russell (Karamigios, Anna) (Entered: 11/16/2022) |
| 11/17/2022 | | Minute Entry for proceedings held before Judge Ann M. Donnelly: Sentencing held on 11/17/2022 for Donnell Russell (1). Appearances by AUSA Anna Karamigios and Michael Freedman for defendant Russell (present on bond). Probation Officer Frank Nikolaidis present. Case called. Statement from defense counsel, government, and defendant heard. Defendant sentence on count 1 to Twenty(20) months imprisonment. One year supervised release. $100 special assessment and $5000 fine. Defendant informed of right to appeal. (Court Reporter Avery Armstrong.) (DG) (Entered: 11/21/2022) |
| 11/21/2022 | 34 | JUDGMENT as to Donnell Russell (1), Count(s) 1, Twenty(20) months imprisonment. One year supervised release. $100 special assessment. $5000 fine. Ordered by Judge Ann M. Donnelly on 11/21/2022. (DG) (Entered: 11/21/2022) |
| 01/30/2023 | 36 | MOTION to Continue *Surrender date from 2/21/23 to 5/10/23* by Donnell Russell. (Freedman, Michael) (Entered: 01/30/2023) |
| 01/30/2023 | | ORDER as to Donnell Russell(1). The 36 request for an extension of Mr. Russell's surrender date in this matter from February 21, 2023 to May 10, 2023 is granted. Ordered by Judge Ann M. Donnelly on 1/30/2023. (DG) (Entered: 01/30/2023) |
| 05/02/2023 | 37 | MOTION to Continue *Surrender Date* by Donnell Russell. (Freedman, Michael) (Entered: 05/02/2023) |
| 05/03/2023 | | ORDER as to Donnell Russell. The government is to respond to the defense 37 motion to extend the surrender dated by 5/4/2023. Ordered by Judge Ann M. Donnelly on 5/3/2023. (DG) (Entered: 05/03/2023) |
| 05/04/2023 | 39 | RESPONSE in Opposition re 37 MOTION to Continue *Surrender Date* (Karamigios, Anna) (Entered: 05/04/2023) |
| 05/05/2023 | 40 | Letter *providing update as to defendant's request to delay his surrender date* as to Donnell Russell (Karamigios, Anna) (Entered: 05/05/2023) |
| 05/05/2023 | | ORDER denying 37 Motion as to Donnell Russell. Mr. Russell's surrender date in this matter remains May 10, 2023. Signed by Judge Ann M. Donnelly on 5/5/2023. (DG) (Entered: 05/05/2023) |

Case 1:25-cv-00984-PKC-LKE    Document 1    Filed 02/19/25    Page 78 of 80 PageID #: 78

| 05/09/2023 | 41 | MOTION for Extension of Time to File *Notice of Appeal* by Donnell Russell. (TT) (Entered: 05/09/2023) |
|---|---|---|
| 05/09/2023 | 42 | NOTICE OF FILING submitted by Donnell Russell, defendant. (Attachments: # 1 Notice of Limited Special Visitations & Foreign Actors Liability Motion/Mandate to Dismiss, # 2 Attachments, # 3 Notice of Abatement, # 4 Letter dated 4/7/23 to Mr. Michael Freeman, The Freedman Firm) (RG) Modified on 5/9/2023 (RG). (Entered: 05/09/2023) |
| 05/09/2023 | 43 | NOTICE OF APPEAL by Donnell Russell re Order on Motion to Continue, (TT) (Entered: 05/09/2023) |
| 05/09/2023 | | APPEAL FILING FEE DUE re 43 Notice of Appeal - Final Judgment Please either come to the clerks office or mail the filing fee in the amount of $505.00. (TT) (Entered: 05/09/2023) |
| 05/09/2023 | | Electronic Index to Record on Appeal as to Donnell Russell sent to US Court of Appeals 43 Notice of Appeal - Final Judgment Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (TT) (Entered: 05/09/2023) |
| 05/09/2023 | | ORDER granting 41 Motion for Extension of Time to File as to Donnell Russell. Ordered by Judge Ann M. Donnelly on 5/9/2023. (DG) (Entered: 05/09/2023) |
| 05/09/2023 | 44 | Submissions regarding terminating Legal Services by Donnell Anton Russell, plaintiff pro se: Letter dated 4/7/23 to Michael Freeman; (Attachments: # 1 Letter dated 4/7/23 to Nora K. Hirozawa, re: terminating legal service, # 2 Letter dated 4/7/23 to Mr. Morris re: terminating legal service, # 3 Affidavit of Truth) (RG) (Entered: 05/10/2023) |
| 05/10/2023 | 45 | Submission made by Donnell Russel, dft as Notice of Filing "Notice of Limited Special Visitation & Foreign Actors Liability Motion/Mandate to Dismiss as to Donnell Russell. (RG) (Entered: 05/17/2023) |
| 06/12/2023 | | ORDER. The defendant, now *pro se*, filed a submission in this Court on May 9, 2023, the same day that he filed a notice of appeal to the Second Circuit, appealing my denial of his request to delay his surrender date. The defendant then filed an identical submission on May 10, 2023. (ECF No. 45.) Though the Court normally would not have jurisdiction over a case that has been appealed to the Second Circuit, Federal Rule of Criminal Procedure 37(a) provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may...deny the motion." <br><br> The Court is unable to discern any conceivable basis for relief in the defendant's 42 filing, which is styled as a "notice to abate [the] plaintiff's suit" for "lack of subject matter jurisdiction." (ECF No. 42-3 at 1.) The defendant also challenges the indictment pursuant to 28 U.S.C. § 1867(e) and Federal Rules of Criminal Procedure 6(b)(1) and (2). (*Id.* at 3-4). In addition, he includes documents with legal-sounding titles, but that have no relation to anything having to do with this case: an "Appointment of Fiduciary" (ECF No. 42-2 at 2), a "Surety Bond Cover" (ECF No. 42-2 at 4), a "Notice of Abatement" (ECF No. 42-3 at 1), and a "Cancellation of All Prior Powers of Attorney,"(ECF No. 42-3 at 17). Viewing this submission in a light most favorable to the *pro se* defendant, and in view of his |

citation to Rule 60, I interpret his submission to be at least in part a motion for reconsideration of my denial of his request to postpone his surrender date. "Because the Federal Rules of Criminal Procedure do not specify the standards governing a motion to reconsider," courts in this district look to "Local Civil Rule 6.3 ('Local Rule 6.3') for the appropriate standard for reconsideration of a decision in a criminal matter." *United States v. Krasniqi*, No. 10-CR-464, 2022 WL 16925215, at *1 (S.D.N.Y. Nov. 13, 2022) (citation omitted) (collecting cases). Local Rule 6.3 provides parties with an opportunity to inform the Court of "matters or controlling decisions" which they believe the Court has "overlooked." "Local Rule 6.3 is narrowly construed and strictly applied so as to avoid repetitive arguments on issues that the court has already considered fully." *In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 652 (S.D.N.Y. 2012). The defendant does not identify any matters or controlling decisions that the Court overlooked. In any event, since the defendant has already surrendered, this application is moot. Accordingly, the motion is denied.

To the extent the defendant is making a motion to dismiss the indictment, that motion is also denied. As an initial matter, the motion is time-barred. A motion to dismiss an indictment based on an alleged defect in instituting the prosecution, including an error in the grand-jury proceeding, must be raised before trial, and a motion based on lack of jurisdiction must be raised while the "case is pending." Fed. R. Crim. P. 12(b)(2). "A case is pending while it is on direct appeal, but is no longer pending once the time for filing a petition for a writ of certiorari has expired." *Henareh v. United States*, No. 14-CV-07145, 2018 WL 3468715, at *3 (S.D.N.Y. June 8, 2018) (citing *Chacko v. United States*, No. 04-CV-02258, 2005 WL 1388723, at *4 (S.D.N.Y. June 8, 2005); *see also United States v. Coll*, No. 15-CR-360, 2022 WL 2181538, at *3 (S.D.N.Y. June 16, 2022) ("A petitioner's criminal proceedings are no longer pending if [p]etitioner has been tried, convicted and has had his conviction affirmed on appeal." (citation and internal quotation marks omitted)).

The time for filing a direct appeal of a criminal conviction expires fourteen days after "the entry of... the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A)(i). The defendant did not appeal his conviction, and the time to do so has passed. (*See* ECF No. 34 dated November 21, 2022.) Moreover, the defendant's jurisdictional argument lacks merit. "To challenge the court's jurisdiction, 'the defendant who has pleaded guilty must establish that the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense.'" *United States v. Kumar*, 617 F.3d 612, 620 (2d Cir. 2010). The defendant cites the following reasons in support of his claim that the Court lacked subject-matter jurisdiction: "when government personnel deprive the Citizen of [constitutional] rights... the courts lose subject matter jurisdiction," and "where [a] quasi-judicial officer exceeds authority Congress vested in him by the law, the United States loses subject matter jurisdiction." (ECF No. 42-3 at 9, 12.) These statements are not cognizable bases for dismissal. Thus, to the extent he is making a motion to dismiss the indictment, that motion is denied. Ordered by Judge Ann M. Donnelly on 6/12/2023. (JJ) (Entered: 06/12/2023)

| 06/26/2023 | 46 | NOTICE OF FILING by Donnell Russell. (Attachments: # 1 MOTION IN OPPOSITION TO JUNE 12, 2023 ORDER DENYING DEFENDANT'S MAY 9, 2023 AND MAY 10, 2023 FILINGS) (TLH) (Entered: 06/28/2023) |

| 09/21/2023 | 47 | MOTION to Vacate under 28 U.S.C. 2255 by Donnell Russell. (RG) Civil case 1:23-cv-06985-AMD opened. (Entered: 09/21/2023) |
| 10/02/2023 | 48 | MOTION for Bond *defendant requesting bail pending his 2255 petition* by Donnell Russell. (RG) (Entered: 10/12/2023) |
| 11/14/2023 | 50 | NOTICE OF CONSENT to Magistrate Judge submitted by Donnell Russell. (RG) (Entered: 12/01/2023) |
| 11/30/2023 | | ORDER as to Donnell Russell. The government's response to the 48 motion for bond pending the 2255 petition is due on or before 12/14/2024. Ordered by Judge Ann M. Donnelly on 11/29/2023. Ordered by Judge Ann M. Donnelly on 11/30/2023. (DG) (Entered: 11/30/2023) |
| 11/30/2023 | 49 | ORDER TO SHOW CAUSE and Electronic Service upon the US Attorneys Office re 47 MOTION to Vacate under 28 U.S.C. 2255 filed by Donnell Russell. ( Ordered by Judge Ann M Donnelly on 11/29/2023 ) (RG) (Entered: 11/30/2023) |
| 12/11/2023 | 51 | Letter *requesting an extension of time to respond to defendant's motions* as to Donnell Russell (Karamigios, Anna) (Entered: 12/11/2023) |
| 12/11/2023 | | ORDER granting 51 Motion for Extension of Time to File Response. The governments response to the defendant's motions are due 12/22/2023. Ordered by Judge Ann M. Donnelly on 12/11/2023. (DG) (Entered: 12/11/2023) |
| 12/21/2023 | 52 | RESPONSE in Opposition re 48 MOTION for Bond *defendant requesting bail pending his 2255 petition*, 47 MOTION to Vacate under 28 U.S.C. 2255 (Attachments: # 1 Exhibit A (Plea Agreement), # 2 Exhibit B (Plea Transcript), # 3 Exhibit C (Sentencing Transcript)) (Karamigios, Anna) (Entered: 12/21/2023) |